**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

JOHN DOE,

                                        *Plaintiff*,

                    v.

COLUMBIA UNIVERSITY,

                                        *Defendant*.

No. 1:20-cv-06770-GHW

**Oral Argument Requested**

---

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
### THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK'S
### <u>PARTIAL MOTION TO DISMISS THE AMENDED COMPLAINT</u>

Roberta A. Kaplan
Gabrielle E. Tenzer
Marcella Coburn
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, 63rd Floor
New York, NY 10118
212.763.0883
rkaplan@kaplanhecker.com
gtenzer@kaplanhecker.com
mcoburn@kaplanhecker.com

October 7, 2021

# <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ....................................................................................... 1

RELEVANT BACKGROUND ...................................................................................... 3

ARGUMENT .................................................................................................................. 6

    I.     Plaintiff Has Ignored this Court's Ruling that He Cannot Replead Claims Barred
         by Res Judicata or Collateral Estoppel. ............................................................ 6

    II.    Lack of Standing and Mootness Continue to Prevent Plaintiff from Seeking Relief
         Related to His Expulsion and Failure to Obtain His Diploma.................................. 7

        A.  Plaintiff does not allege that his expulsion and lack of diploma are fairly
            traceable to Columbia's challenged actions. ......................................................... 8

        B.  Plaintiff's requests for diploma-related relief continue to be moot because he
            still does not challenge the email hacking proceeding. ...................................... 12

    III.   Plaintiff's Amended Allegations Do Not Salvage His Previously Dismissed
         Title IX Claims. ................................................................................................. 13

        A.  Plaintiff's additions to his interim suspension selective enforcement claim
            are legal arguments that this Court already rejected............................................ 13

        B.  Plaintiff's scattershot new allegations still fail to state a deliberate indifference
            claim. .................................................................................................................. 15

CONCLUSION............................................................................................................. 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)............................................................................................ 14, 15, 17

*Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.,*
  968 F.2d 196 (2d Cir. 1992)...................................................................................... 8

*Bailey v. N.Y. Law Sch.,*
  No. 16 Civ. 4283, 2017 WL 6611582 (S.D.N.Y. Dec. 27, 2017)...................................... 18, 20

*Bandler v. Town of Woodstock,*
  832 F. App'x 733 (2d Cir. 2020) .............................................................................. 11

*Baur v. Veneman,*
  352 F.3d 625 (2d Cir. 2003)..................................................................................... 11

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007)............................................................................................ 4, 17

*Bravo v. Established Burger One, LLC,*
  No. 12 Civ. 9044, 2013 WL 5549495 (S.D.N.Y. Oct. 8, 2013) ........................................... 6, 7

*Brown v. Daikin Am. Inc.,*
  756 F.3d 219 (2d Cir. 2014)..................................................................................... 14

*Caraballo v. United States,*
  830 F.2d 19 (2d Cir. 1987)...................................................................................... 12

*Chafin v. Chafin,*
  568 U.S. 165 (2013).............................................................................................. 13

*Daniel v. Nat'l Park Serv.,*
  891 F.3d 762 (9th Cir. 2018) ................................................................................... 9

*Davis v. Monroe Cnty. Bd. of Educ.,*
  526 U.S. 629 (1999)............................................................................................ 16, 20

*Doe v. Baum,*
  903 F.3d 575 (6th Cir. 2018) ................................................................................... 5, 22

*Doe v. Columbia Univ.,*
  No. 101688/18, 2020 WL 999006 (N.Y. Sup. Ct. Jan. 6, 2020)........................................ 11, 13

*Doe v. E. Haven Bd. of Educ.,*
  200 F. App'x 46 (2d Cir. 2006) ............................................................................... 17

*Doe v. Quinnipiac Univ.*,
    404 F. Supp. 3d 643 (D. Conn. 2019) .................................................................................. 21

*Doe v. Union Coll.*,
    No. 19 Civ. 284, 2020 WL 1063063 (N.D.N.Y. Mar. 5, 2020) ............................................. 21

*Doe v. Univ. of Ark.*,
    974 F.3d 858 (8th Cir. 2020) ................................................................................................... 5

*Foy v. New York*,
    No. 21 Civ. 7647, 2021 WL 4311284 (S.D.N.Y. Sept. 20, 2021) .......................................... 17

*Gebser v. Lago Vista Indep. Sch. Dist.*,
    524 U.S. 274 (1998) ............................................................................................................... 16

*Graham v. Long Island R.R.*,
    230 F.3d 34 (2d Cir. 2000) ..................................................................................................... 14

*Hayut v. State Univ. of N.Y.*,
    352 F.3d 733 (2d Cir. 2003) ................................................................................................... 20

*HB v. Monroe Woodbury Cent. Sch. Dist.*,
    No. 11 Civ. 5881, 2012 WL 4477552 (S.D.N.Y. Sept. 27, 2012) .......................................... 20

*Heldman v. Sobol*,
    962 F.2d 148 (2d Cir. 1992) ...................................................................................................... 8

*Henry-Lee v. City of New York*,
    746 F. Supp. 2d 546 (S.D.N.Y. 2010) .................................................................................... 12

*Hudson v. Nat'l Football League Mgmt. Council*,
    No. 18 Civ. 4483, 2020 WL 1547467 (S.D.N.Y. Mar. 31, 2020) .......................................... 10

*Marcus v. Leviton Mfg. Co., Inc.*,
    661 F. App'x 29 (2d Cir. 2016) .............................................................................................. 17

*Martinetti v. Mangan*,
    No. 17 Civ. 5484, 2019 WL 1255955 (S.D.N.Y. Mar. 19, 2019) .......................................... 20

*MSP Recovery Claims, Series LLC v. AIG Prop. Cas. Co.*,
    No. 20 Civ. 2102, 2021 WL 1164091 (S.D.N.Y. Mar. 26, 2021) .................................. 8, 9, 10

*Nat. Res. Def. Council, Inc. v. U.S. Food & Drug Admin.*,
    710 F.3d 71 (2d Cir.), *as amended* (Mar. 21, 2013) ......................................................... 8, 11

*Nungesser v. Columbia Univ.*,
    No. 15 Civ. 3216, 2017 WL 1102661 (S.D.N.Y. Mar. 23, 2017) .................................... passim

*Nungesser v. Columbia Univ.*,
    244 F. Supp. 3d 345 (S.D.N.Y. 2017)........................................................................ 17, 18, 19

*Palm Beach Strategic Income, LP v. Salzman*,
    457 F. App'x. 40 (2d Cir. 2012) ..................................................................................... 7

*Papelino v. Albany Coll. of Pharmacy of Union Univ.*,
    633 F.3d 81 (2d Cir. 2011)............................................................................................. 5

*Pennie v. Obama*,
    255 F. Supp. 3d 648 (N.D. Tex. 2017) .......................................................................... 9

*Raihan v. George Washington Univ.*,
    324 F. Supp. 3d 102 (D.D.C. 2018)............................................................................. 21

*RCC Ventures, LLC v. Brandtone Holdings Ltd.*,
    322 F.R.D. 442 (S.D.N.Y. 2017) ................................................................................... 2

*Roskin-Frazee v. Columbia Univ.*,
    No. 17 Civ. 2032, 2018 WL 6523721 (S.D.N.Y. Nov. 26, 2018) ............................... 21

*Saunders v. N.Y. Convention Ctr. Operating Corp.*,
    No. 20 Civ. 5805, 2021 WL 4340793 (S.D.N.Y. Sept. 23, 2021) ............................... 14

*Schwake v. Ariz. Bd. of Regents*,
    967 F.3d 940 (9th Cir. 2020) ....................................................................................... 19

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016) ................................................................................................. 12

*Taylor v. F.D.I.C.*,
    132 F.3d 753 (D.C. Cir. 1997) ..................................................................................... 11

*TechnoMarine SA v. Giftports, Inc.*,
    758 F.3d 493 (2d Cir. 2014)........................................................................................... 6

*Union Cosm. Castle, Inc. v. Amorepacific Cosms. v. USA, Inc.*,
    454 F. Supp. 2d 62 (E.D.N.Y. 2006) ........................................................................... 12

*Winant v. Carefree Pools*,
    709 F. Supp. 57 (E.D.N.Y. 1989) ................................................................................ 12

## Statutes and Rules

Fed. R. Civ. P. 12(b)(1) ……………………………………………………....…3, 7

Fed. R. Civ. P. 12(b)(6) …………………………………………………...……3

N.Y. Penal Law § 156.05.................................................................................................. 11

Defendant The Trustees of Columbia University in the City of New York ("Columbia" or the "University") respectfully submits this memorandum of law in support of its partial motion to dismiss the Amended Complaint.

## PRELIMINARY STATEMENT

Just as students at Columbia must follow Columbia's rules of conduct, parties before the Court must follow the Court's orders. Plaintiff John Doe is no exception. During the 2017-2018 school year, four different Columbia and Barnard students accused Plaintiff of sexual assault in violation of Columbia's Gender-Based Misconduct ("GBM") Policy. While the various GBM proceedings against him were pending as a result of those complaints, Plaintiff hacked into the email account of one of the students and, pretending to be her, sent a fraudulent email to a Columbia administrator purporting to withdraw her GBM complaint against him. Not surprisingly, Plaintiff was promptly caught and expelled from Columbia for email hacking, which is an independent violation of Columbia's student misconduct rules. Afterward, Plaintiff mounted two separate Article 78 challenges in state court relating to the email hacking expulsion and two of the three GBM proceedings where he was found responsible for sexual assault. And when those challenges failed, he sought the same relief from this Court, although, as this Court has already determined, the principle of res judicata clearly barred him from doing so.

In his Amended Complaint, Plaintiff shows the same disregard for process and precedent. On August 1, 2021, this Court issued an order that granted Plaintiff leave to replead certain claims, but explicitly denied him leave to replead as futile "matters precluded under the doctrines of res judicata or collateral estoppel." ECF 34 at 59. But Plaintiff ignored that ruling, repleading claims in his Amended Complaint that this Court expressly held were barred by collateral estoppel and res judicata. Plaintiff also disregarded the Court's carefully reasoned opinion, repleading his

1

dismissed claims without alleging a single new fact that would justify a different result under the applicable law that this Court clearly analyzed in its prior decision.[1]

Specifically, in its August 1 Order, the Court dismissed Plaintiff's claims for injunctive relief—including the awarding of his diploma and a transcript devoid of disciplinary notations—related to the Jane Doe 1 and Jane Doe 4 GBM proceedings, ECF 34 at 32-36, held that collateral estoppel barred Plaintiff's erroneous outcome claim with respect to the Jane Doe 1 proceeding (Count 4), *id.* at 2, 52-53, and specifically directed that Plaintiff could *not* replead those claims in his Amended Complaint here, *id.* at 59. *See* Appendix A. Although Plaintiff's Amended Complaint repleads these claims anyway, *see* ECF 41 at 136-38, ¶¶ 232, 234, 237, 239, 243, 245,[2] this Court has already dismissed them and ruled that they cannot be repleaded. Plaintiff is bound to abide by that ruling.

While this Court did permit Plaintiff to attempt to cure three fatal deficiencies in his original complaint, he has failed to do so, instead adding either conclusory and threadbare allegations or improper legal conclusions and argument to his Amended Complaint. *First*, this Court held that Plaintiff's original complaint failed to establish Article III standing to seek any relief related to his expulsion and lack of diploma, because Plaintiff "was independently expelled for email hacking" and therefore "his claims for injunctive relief are not fairly traceable to the gender-based misconduct proceedings he challenges here." ECF 34 at 2; *see also id.* at 28-29. For similar reasons, the Court concluded claims for that relief were also moot. *Id.* at 29-30. *Second*,

---

[1]     Plaintiff also filed what he called a motion for "re-argument, reconsideration and amendment of certain rulings . . . and alternatively for other relief (appeal certification)," ECF 36, 36-1, completely disregarding that the standard for a motion for reconsideration is "strict," and that it cannot be "a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple," *RCC Ventures, LLC v. Brandtone Holdings Ltd.*, 322 F.R.D. 442, 445 (S.D.N.Y. 2017) (Woods, J.) (internal quotation marks and citations omitted). Plaintiff withdrew that motion at a conference with the Court on August 26, 2021. *See* ECF 40.

[2]     References to "¶ __" are to paragraphs of Plaintiff's Amended Complaint, ECF 41.

this Court held that Plaintiff failed to identify a similarly situated comparator sufficient to plead a claim for selective enforcement under Title IX with respect to the interim suspension Columbia imposed following multiple GBM complaints against Plaintiff. *Id.* at 2, 48-50. And *third*, this Court held that Plaintiff failed to allege any facts indicating that he was subject to peer-to-peer "*Davis* harassment" to which Columbia was deliberately indifferent. *Id.* at 2, 51-52. But Plaintiff does not—and cannot—supply the Court with any new factual allegations in his Amended Complaint to overcome these fatal flaws.

This motion rests on a simple, but fundamental principle: Plaintiff should be constrained by this Court's previous order. That is the way the judicial process works. Parties must comply with court orders, and Plaintiff is no exception. For that reason, Plaintiff's claims barred by res judicata or collateral estoppel should be dismissed as exceeding Plaintiff's leave to amend, his claims for diploma-related relief should again be dismissed for lack of subject-matter jurisdiction under Rule 12(b)(1), and his selective enforcement and "*Davis* harassment" claims related to his interim suspension (Counts 2 and 3) should again be dismissed for failure to state a claim under Rule 12(b)(6).

## RELEVANT BACKGROUND

Because this Court is already familiar with the facts of this case, *see* ECF 34 at 3-23, Columbia incorporates here the factual and procedural background summarized in its prior motion to dismiss. *See* ECF 28 at 2-12. None of the new allegations added to Plaintiff's Amended Complaint, however, alters the core facts or addresses the fatal flaws previously identified by this Court. As discussed below, the new "allegations" are: (1) legal argument, which is inappropriate, *see Nungesser v. Columbia Univ.*, No. 15 Civ. 3216, 2017 WL 1102661, at *2 (S.D.N.Y. Mar. 23, 2017) (Woods, J.); (2) devoid of detail sufficient to "nudge[] [the] claims across the line from

conceivable to plausible," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); or (3) unrelated to the claims this Court granted leave for Plaintiff to replead, *see* ECF 34 at 59.

Email Hacking. In an attempt to manufacture a causal connection between his GBM proceedings and his email hacking, since the Court previously found the absence of such a connection fatal to his standing to seek diploma-related relief, *see* ECF 34 at 27-29, Plaintiff adds two new allegations: (1) the conclusory allegation that he would not have hacked into a complainant's email "but for the cumulative developments in the sexual misconduct proceedings . . . and Columbia's deliberate indifference to [his] need for services," ¶ 170; and (2) the assertions that his email hacking was relevant to the assessment of his credibility in the subsequent Jane Doe 3 and Jane Doe 4 proceedings. ¶¶ 171, 184. But Plaintiff still does not plead "any facts that would give rise to a plausible inference linking his email hacking to Columbia's poor treatment of him in the GBM proceedings," ECF 34 at 29, as this Court clearly stated he must.

Comparator Allegations. In an attempt to replead his previously dismissed claim of selective enforcement with respect to his interim suspension (Count 2), Plaintiff has added two new paragraphs in his Amended Complaint. *See* ¶¶ 208-09. But neither of those paragraphs contains a single fact concerning his three alleged comparators (Jane Does 1-3) that was not before this Court when it decided, correctly, that "it is not plausible that a jury could determine that any of Jane Does 1–3 and Plaintiff are similarly situated." ECF 34 at 50. To the contrary, Plaintiff's new "allegations" add no new facts at all, instead adding only case citations and legal argument, which this Court is not obligated to accept as true, *see Nungesser*, 2017 WL 1102661, at *2, and much of which this Court already considered and addressed in its previous order. *See* ¶¶ 208-09; ECF 34 at 49-50.[3]

---

[3]    Plaintiff has also added legal argument in lieu of facts to his Amended Complaint with respect to his allegation that he was not permitted to cross-examine witnesses or the complainants, which he alleges is "per se" articulable

"*Davis* Harassment." Finally, Plaintiff has added barebones factual allegations and legal argument related to his previously dismissed claim of "*Davis* harassment" with respect to his interim suspension (Count 3). *See* ECF 34 at 50-52; ¶¶ 127, 214-19, 223-24. Plaintiff now alleges that in violation of the GBM Policy, Jane Does 1 and 2 provided "confidential and defamatory" information about Plaintiff to an editor of a student-run campus news website at Columbia called *Bwog*, ¶¶ 127, 214-17; *see* ECF 34 at 10; that he "found on *Bwog* that his full name had been disclosed, and that he had been called a 'rapist,'" ¶ 127; and that he "was socially ostracized, generally, and in particular, was compelled to resign from clubs and his fraternity out of fear of bad publicity, owing to the [B]*wog* story," ¶ 219. Plaintiff also now alleges that Columbia "greatly compounded this hostile environment" by dismissing or otherwise failing to "prosecute" some of Plaintiff's complaints against Jane Does 1, 2, and 3, by imposing an interim suspension and no-contact order on Plaintiff, and by "imbu[ing] the campus atmosphere with gender bias" "through social media." ¶¶ 218-19.[4] As with Plaintiff's other attempts to replead his previously dismissed claims, he litters these new paragraphs with case citations and legal argument, ¶¶ 215, 217-19, 223, that need not be taken as true. None of these new allegations suffice to alter this Court's determination that neither the publication of the *Bwog* article nor Columbia's investigation of sexual assault allegations against Plaintiff constituted sexual harassment. ECF 34 at 51.

Plaintiff's remaining new allegations relate either to (1) claims that this Court did not grant Plaintiff leave to replead, or (2) claims relating to gender bias that were not dismissed. *See, e.g.*,

---

doubt under *Doe v. Baum*, 903 F.3d 575, 585-86 (6th Cir. 2018), ¶ 195, and that Columbia "refused" to investigate his sexual exploitation complaint against Jane Doe 1, citing *Doe v. University of Arkansas*, 974 F.3d 858, 865 (8th Cir. 2020), ¶ 231. None of those legal arguments should be taken as true. *Nungesser*, 2017 WL 1102661, at *2.

[4]     Plaintiff also alleges that "the 'interim suspension' taken within days of his filing a complaint constituted retaliation against his filing a harassment complaint against Jane Does 1 – 3." ¶ 219. Plaintiff alleges no facts in support of this claim, much less facts sufficient to establish a prima facie case of Title IX retaliation. *See Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 91-92 (2d Cir. 2011).

¶¶ 62-67, 69, 77-79, 92, 107, 194-95, 230-31. These new allegations are irrelevant to whether Plaintiff's Amended Complaint remedies the deficiencies of his first complaint and Columbia is obviously not asking the Court to reconsider its prior order in any respect.

## ARGUMENT

I.   **Plaintiff Has Ignored this Court's Ruling that He Cannot Replead Claims Barred by Res Judicata or Collateral Estoppel.**

This Court's ruling on the scope of Plaintiff's leave to replead was clear. Citing *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014), which holds, among other things, that leave to replead may be denied "for good reason, including futility," this Court held that "[r]epleading matters *precluded under the doctrines of res judicata or collateral estoppel* would be futile. Therefore, leave is denied to replead those aspects of Plaintiff's claims." ECF 34 at 59 (emphasis added).

There were two "aspects of Plaintiff's claims" that this Court held were precluded under the doctrines of res judicata or collateral estoppel. *Id.* First, this Court held that Plaintiff's claims for injunctive relief arising from the Jane Doe 1 and Jane Doe 4 proceedings are precluded by res judicata. *Id.* at 32-36; *see also* ECF 28 at 18-20. Second, this Court held that "Plaintiff is collaterally estopped from pursuing an erroneous outcome claim as to the Jane Doe 1 proceeding." ECF 34 at 2; *see also* ECF 28 at 31-32; ECF 33 at 16. Nonetheless, Plaintiff continues to seek injunctive relief arising from the Jane Doe 1 and Jane Doe 4 proceedings, *see* ¶¶ 232, 234, 237, 239, 243, 245, and has attempted to replead his Jane Doe 1 erroneous outcome claim, ¶¶ 228-34.

The Court should dismiss these claims, which fall clearly outside the bounds of the leave to replead granted in this Court's prior opinion and order. "The power to dismiss claims that exceed a leave to amend stems from the Court's inherent authority." *Bravo v. Established Burger One, LLC*, No. 12 Civ. 9044, 2013 WL 5549495, at *5 (S.D.N.Y. Oct. 8, 2013) (McMahon, J.)

(collecting cases). Indeed, the Second Circuit has recognized that "[d]istrict courts in this Circuit have routinely dismissed claims in amended complaints where the court granted leave to amend for a limited purpose and the plaintiff filed an amended complaint exceeding the scope of the permission granted." *Palm Beach Strategic Income, LP v. Salzman*, 457 F. App'x. 40, 43 (2d Cir. 2012) (upholding decision rejecting amended complaint "exceeding the parameters of the leave that was given to file an amended complaint"). Accordingly, this Court can and should dismiss all claims in Plaintiff's Amended Complaint that exceed the scope of permission granted to amend. *See Bravo*, 2013 WL 5549495, at *5 (dismissing claims in amended complaint that exceeded scope of leave to amend).

## II. Lack of Standing and Mootness Continue to Prevent Plaintiff from Seeking Relief Related to His Expulsion and Failure to Obtain His Diploma.

Similarly, this Court previously concluded that Plaintiff could not pursue any diploma-related relief for any of his claims because he did not adequately allege Article III standing and because his claims for that relief are moot. ECF 34 at 26-30. The reason is simple: "Plaintiff's expulsion from Columbia and failure to obtain his diploma resulted from a disciplinary proceeding not challenged" here. *Id.* at 26. Rather, Plaintiff was expelled because he hacked into the email account of one of the Jane Does and sent an email impersonating her to a Columbia administrator purporting to withdraw her GBM complaint against Plaintiff. *See id.* at 26-27. Because there was no causal nexus between Plaintiff's expulsion and the GBM proceedings at issue in this case, this Court concluded that it lacked subject-matter jurisdiction over Plaintiff's claims for diploma-

related relief and dismissed those claims under Rule 12(b)(1). *See id.* at 29. Nothing in Plaintiff's

Amended Complaint changes that conclusion.[5]

A.  **Plaintiff does not allege that his expulsion and lack of diploma are fairly traceable to Columbia's challenged actions.**

This motion, like Columbia's prior motion to dismiss, "focuses on the . . . traceability, or

causation" element of Article III standing. ECF 34 at 24. The causation requirement is meant to

"ensure[] that the injury alleged is attributable to the defendant." *Heldman v. Sobol*, 962 F.2d 148,

156 (2d Cir. 1992). Accordingly, a plaintiff must do more than "allege[] in a conclusory fashion"

that a link between his alleged injury and the challenged conduct exists. *See MSP Recovery Claims,*

*Series LLC v. AIG Prop. Cas. Co.*, No. 20 Civ. 2102, 2021 WL 1164091, at *12 (S.D.N.Y. Mar.

26, 2021) (Caproni, J.). "[A]rgumentative inferences favorable to the party asserting jurisdiction

should not be drawn." *Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir.

1992). Perhaps most importantly, "a plaintiff may not establish injury for standing purposes based

on a 'self-inflicted' injury. An injury is self-inflicted so as to defeat the causation necessary to

establish standing . . . 'only if . . . the injury is so completely due to the plaintiff's own fault as to

break the causal chain.'" *Nat. Res. Def. Council, Inc. v. U.S. Food & Drug Admin.*, 710 F.3d 71,

85 (2d Cir.), *as amended* (Mar. 21, 2013) (citation omitted).

Once again, Plaintiff has failed to meet his pleading burden, instead doubling down—in

wholly conclusory fashion—on a theory of traceability that is as simple as it is absurd: "Columbia

made me do it." But none of Plaintiff's three new allegations on this subject come anywhere close

to alleging facts capable of giving rise to a plausible inference that Columbia's challenged actions

---

[5]  Because Plaintiff's new allegations have not altered the factual basis for Plaintiff's claims, Columbia incorporates
    its previous arguments regarding the Court's lack of subject-matter jurisdiction for Plaintiff's claims for relief
    related to his diploma and expulsion, *see* ECF 28 at 15-18; ECF 33 at 2-6, in addition to the arguments below.

caused his emailing hacking or resulting expulsion and lack of diploma. *See* ECF 34 at 29. Indeed, Plaintiff offers nothing more than his own conclusory assertion that the requisite causal relationship exists. And even if Plaintiff's *ipse dixit* pleading was not fatal to his claim—which it is—Plaintiff's traceability theory also fails on plausibility grounds because his email hacking was clearly a "self-inflicted" injury sufficient to break the causal chain.

### 1.   Plaintiff still fails to plead a causal link between Plaintiff's email hacking and Columbia's challenged actions.

In finding that Plaintiff lacked Article III standing to bring claims for injunctive relief and damages arising from his expulsion and lack of a diploma, this Court correctly concluded that Plaintiff's original complaint did not allege "any facts that would give rise to a plausible inference linking his email hacking to Columbia's poor treatment of him in the GBM proceedings." ECF 34 at 29. None of the Amended Complaint's three new allegations relating to email hacking cure this fatal defect.

First, Plaintiff alleges that his email hacking "would not have occurred but for the cumulative developments in the sexual misconduct proceedings . . . and Columbia's deliberate indifference to John Doe's need for services." ¶ 170. But Plaintiff must provide something more than the conclusory allegation that a causal link somehow exists. *MSP Recovery Claims, Series LLC*, 2021 WL 1164091, at *12; *see also Daniel v. Nat'l Park Serv.*, 891 F.3d 762, 767 (9th Cir. 2018) (concluding plaintiff lacked Article III standing for her "naked assertions" of traceability and that she could not "engage in an ingenious academic exercise in the conceivable to explain how defendants' actions caused [her] injury" (internal quotation marks omitted)); *Pennie v. Obama*, 255 F. Supp. 3d 648, 661 (N.D. Tex. 2017) (dismissing claims for lack of Article III standing because "boilerplate allegations of causation are inadequate to demonstrate causation"). Plaintiff does not allege when or how he hacked into a complainant's email account, nor provide

any more detail regarding the relationship between that hacking, his expulsion, and his GBM proceedings than he did in his original complaint. *See* ECF 34 at 28-29 (recounting Plaintiff's allegations). Without any factual allegations to support Plaintiff's claimed link between the GBM proceedings and his decision to hack into a complainant's email, the Amended Complaint contains "nothing beyond Plaintiff's *ipse dixit*," which is insufficient to establish standing. *MSP Recovery Claims, Series LLC*, 2021 WL 1164091, at *12; *see id.* (plaintiff did not adequately plead traceability where the complaint merely "allege[d] in conclusory fashion" that a causal nexus existed); *see also Hudson v. Nat'l Football League Mgmt. Council*, No. 18 Civ. 4483, 2020 WL 1547467, at *7 (S.D.N.Y. Mar. 31, 2020) (Woods, J.) (concluding a plaintiff failed to establish standing where "the allegations in the amended complaint [did not] permit the Court to draw a reasonable inference" necessary to show plaintiff's injury). Tellingly, the Amended Complaint still alleges, as it must, that Plaintiff was "permanently expelled *as a result of the decision finding him responsible for the e-mail hacking and alleged retaliation in connection with the e-mail hacking*." ¶ 170 (emphasis added); *cf.* ECF 34 at 26-27 (considering same allegation in original complaint).

Next, Plaintiff alleges that his email hacking was "decisive in determinations of credibility regarding Jane Does 3 and 4," ¶ 171, and that the Jane Doe 3 investigative report found his email hacking had "significant negative impact" on the assessment of Plaintiff's credibility, ¶ 184. But this gets the causation requirement backwards. The email hacking occurred sometime before July 20, 2018, ¶ 168, although Plaintiff does not allege exactly when. Its consideration in the Jane Doe 4 proceeding (which resulted in a hearing panel decision on November 5, 2018, and a denial of Plaintiff's appeal on December 18, 2018, ¶¶ 178-80) and the Jane Doe 3 proceeding (which resulted in a hearing panel decision on January 23, 2019, ¶ 184) happened long afterwards. In other

words, whether Columbia considered Plaintiff's email hacking in *later* GBM proceedings is irrelevant to whether Plaintiff has plausibly alleged that Columbia's actions in the GBM proceedings caused him to hack into a complainant's email in the first place.

### 2. Plaintiff's expulsion and lack of diploma are fairly traceable only to his own actions.

Even aside from his insufficient factual allegations, Plaintiff's theory of traceability—that Columbia somehow caused him to hack into a complainant's email account because Columbia investigated and adjudicated GBM allegations against him—obviously fails. At the pleading stage, although a court must accept as true the "material allegations" in a complaint, a plaintiff cannot "ask the court to draw unwarranted inferences in order to find standing." *Baur v. Veneman*, 352 F.3d 625, 631, 637 (2d Cir. 2003). Nor can a plaintiff use a "self-inflicted injury" that is "so completely [his] own fault" as a link in the causal chain. *Nat. Res. Def. Council*, 710 F.3d at 85.

These common-sense restrictions doom Plaintiff's theory of traceability here. It is difficult to imagine an act that could possibly be more "Plaintiff's own fault"—or result in a more "unwarranted inference" of traceability to Columbia's actions—than Plaintiff's independent decision to "hack[] into the e-mail account of another student who had filed a sexual assault complaint against him, and, posing as the owner of the e-mail account, e-mail[] Columbia's Title IX Coordinator stating that the previously reported sexual assault allegations against [Plaintiff] were retaliatory and that the student wished to withdraw the complaint." *Doe v. Columbia Univ.*, No. 101688/18, 2020 WL 999006, at *2 (N.Y. Sup. Ct. Jan. 6, 2020). Plaintiff's email hacking—which is prohibited under both Columbia's policies and under New York law, *see* N.Y. Penal Law § 156.05—and subsequent expulsion (which Plaintiff does not challenge here) were the result of Plaintiff's own free will and independent choices and are not fairly attributable to Columbia's investigation and adjudication of complaints of sexual assault against Plaintiff. *See Bandler v.*

*Town of Woodstock*, 832 F. App'x 733, 735 (2d Cir. 2020) (affirming dismissal for lack of standing where injury was not "caused by or fairly traceable to the defendants' conduct" because plaintiff could have, but did not, take certain actions); *Taylor v. F.D.I.C.*, 132 F.3d 753, 767 (D.C. Cir. 1997) (concluding plaintiffs lacked standing to request reinstatement where plaintiffs voluntarily left their jobs, because "their voluntary acts [were] sufficient independent causes of their separation from" their employer); *Union Cosm. Castle, Inc. v. Amorepacific Cosms. USA, Inc.*, 454 F. Supp. 2d 62, 71 (E.D.N.Y. 2006) ("A plaintiff cannot establish Article III standing to pursue a cause of action where that plaintiff is the primary cause of its own alleged injury.").[6]

In other words, if Plaintiff's theory for Article III standing were sufficient, the constitutional traceability requirement would be effectively meaningless. This Court should not allow Plaintiff to flout the constitutional "limitation of federal-court jurisdiction to actual cases or controversies." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (internal quotation marks omitted).

### B. Plaintiff's requests for diploma-related relief continue to be moot because he still does not challenge the email hacking proceeding.

For similar reasons, Plaintiff's new allegations do not alter this Court's previous conclusion that his claims for diploma-related relief are moot. As this Court explained, "[f]ederal courts may not decide questions that cannot affect the rights of litigants in the case before them or give

---

[6] Although the causation standard for standing is lower than that for proximate cause or tort liability, the clarity with which courts conclude that a plaintiff's intervening acts sever causation in those contexts is instructive. *See, e.g.*, *Caraballo v. United States*, 830 F.2d 19, 22 (2d Cir. 1987) ("[Plaintiff's] unfortunate error of judgment was an unforeseeable superseding cause which bars liability from attaching against [defendant]."); *Henry-Lee v. City of New York*, 746 F. Supp. 2d 546, 571 (S.D.N.Y. 2010) ("A plaintiff's own conduct, 'demonstrating a lack of reasonable regard for his own safety' can serve as an intervening cause absolving the defendant of liability." (citation omitted)); *Winant v. Carefree Pools*, 709 F. Supp. 57, 60 (E.D.N.Y. 1989) ("[P]laintiff's reckless conduct constitutes a superceding act that makes it impossible to prove that defendant's conduct is the proximate cause of the injuries sustained.").

opinion[s] advising what the law would be upon a hypothetical state of facts." ECF 34 at 29

(quoting *Chafin v. Chafin*, 568 U.S. 165, 172 (2013)).

Even after being afforded the opportunity to replead, Plaintiff still "has not challenged th[e]

[email hacking] disciplinary proceeding in this matter." *Id.* at 30. Nor could he, as he already did

so unsuccessfully in state court. *Doe v. Columbia Univ.*, 2020 WL 999006, at *2-3, 7-8.

"Accordingly, any decision by the Court regarding Plaintiff's claims for relief related to his

expulsion from Columbia and lack of diploma would not change the fact that Plaintiff was

independently expelled and lacks a diploma due to the email hacking disciplinary procedure." ECF

34 at 30. And for all the same reasons that Plaintiff's new allegations do not establish Article III

standing, they also have no material impact on the Court's mootness analysis. *See id.* (referring to

insufficient allegations of traceability in rejecting Plaintiff's argument that his claims are not

moot). None of Plaintiff's new allegations change the straightforward conclusion that this Court

has already reached—his claims are moot because "regardless of the outcome of this case, Plaintiff

will remain expelled from Columbia and will continue to lack a Columbia diploma because

Columbia found that he had engaged in email hacking." *Id.*

### III. Plaintiff's Amended Allegations Do Not Salvage His Previously Dismissed Title IX Claims.

#### A. Plaintiff's additions to his interim suspension selective enforcement claim are legal arguments that this Court already rejected.

In adjudicating Columbia's prior motion to dismiss, this Court concluded that Plaintiff

failed to state a claim for selective enforcement related to his interim suspension because "it is not

plausible that a jury could determine any of Jane Does 1–3 and Plaintiff are similarly situated."

ECF 34 at 50. As the Court explained:

> At the time Columbia imposed the interim suspension, Plaintiff faced multiple
> allegations of sexual assault from four different students. Jane Does 1–3 faced
> allegations of harassment (Jane Does 1–3) and sexual misconduct (Jane Doe 1)

> from one student. That is a material difference. It makes sense that a school might
> respond differently in imposing interim measures on a student who is facing
> complaints from multiple students than a student who is facing a complaint from
> one student. Such students are not students facing "similar disciplinary charges."
> They are in materially different positions.

*Id.*

While Plaintiff has added two new paragraphs in his Amended Complaint, ostensibly in an

effort to address these pleading deficiencies as highlighted by the Court, those efforts fail. First,

Plaintiff asserts that "the female Jane Doe 1, female Jane Doe 2, and female Jane Doe 3, were each

comparators in all material respects to the male [Plaintiff]," and cites *Brown v. Daikin America*

*Inc.*, 756 F.3d 219 (2d Cir. 2014), and *Graham v. Long Island Rail Road*, 230 F.3d 34 (2d Cir.

2000)—the same cases relied upon by this Court in its previous order. *See* ¶ 208; ECF 34 at 49.

Of course, this "comparator" allegation is meaningless at the pleading stage, where "'[t]hreadbare

recitals of the elements of a cause of action, supported by mere conclusory statements' are

inadequate" to defeat a motion to dismiss. *Saunders v. N.Y. Convention Ctr. Operating Corp.*, No.

20 Civ. 5805, 2021 WL 4340793, at *7 (S.D.N.Y. Sept. 23, 2021) (Woods, J.) (quoting *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009)).

Plaintiff next asserts that "Title VII case law" supports his claim with respect to Jane Does

2 and 3, citing four cases this Court considered and cited in its previous opinion, and two additional

cases that stand for the same propositions articulated by the Court.[7] *Compare* ¶ 209 *with* ECF 34

at 49-50. Again, such allegations are meaningless at the pleading stage. While "a court must accept

all *facts* alleged in the complaint as true, that requirement does not apply to matters that are not

---

[7]   Plaintiff omits Jane Doe 1 on the basis that the Court "has acknowledged the similar situation between Jane Doe
1 and John Doe," citing to that portion of the Court's opinion concerning Plaintiff's Jane Doe 1 selective
enforcement claim. *See* ¶ 209. But as the Court noted in its opinion, "Plaintiff is plausibly similarly situated with
respect to Jane Doe 1 for this purpose but not for the purpose of the imposition of the interim suspension, which
happened only after Plaintiff was facing Title IX complaints from three different students." ECF 34 at 54.

facts. That includes legal conclusions, hypothetical speculation, and arguments." *Nungesser*, 2017 WL 1102661, at *2 (internal quotation marks and citations omitted); *see also Iqbal*, 556 U.S. at 678 (holding that a court must distinguish between facts, on the one hand, and mere conclusory statements or legal conclusions on the other hand, and that the latter must be disregarded).

In any event, Plaintiff's caselaw-based "allegations" simply restate the standard this Court used to assess whether Plaintiff had adequately alleged in his original complaint that the purported comparators were similarly situated to him. This Court analyzed the facts alleged in Plaintiff's original complaint based on the standard now alleged to apply in Plaintiff's Amended Complaint, and concluded that Plaintiff and his purported comparators were in "materially different positions." ECF 34 at 50. Plaintiff may not like the Court's decision, but he cannot change it without alleging any new *facts*, which he has not done here.

### B.    Plaintiff's scattershot new allegations still fail to state a deliberate indifference claim.

Plaintiff's effort to rescue his dismissed deliberate indifference claim based on peer-to-peer sexual harassment fares no better. In his original complaint, Plaintiff alleged that Columbia subjected him to "a campaign of sexual harassment" by "solicit[ing]" complaints from the four Jane Does and "allow[ing] [Plaintiff] to be subjected to ridicule and significantly lowered standing" due to a *Bwog* article. ECF 14 ¶ 210. This Court correctly dismissed that claim, concluding that neither Columbia's "investigating an allegation of sexual assault" nor "the publication of the *Bwog* article," without more, constitute harassment. ECF 34 at 51-52.

In his Amended Complaint, Plaintiff adds a handful of new factual allegations in an attempt to cure his prior pleading deficiencies. But these new allegations do nothing more than re-allege harassment based on the same two theories that this Court already rejected. The hodge-podge of

other allegations that Plaintiff haphazardly tosses into his Amended Complaint are either more of the same or are completely irrelevant to Plaintiff's deliberate indifference claim.

As set forth in this Court's previous opinion, a school may be held liable under Title IX if it was "'deliberately indifferent to sexual harassment, of which [it had] actual knowledge, that is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school.' The harassment forming the basis for a Title IX claim must also, of course, be 'gender-oriented.'" ECF 34 at 50-51 (quoting *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 650-51 (1999)). Moreover, as this Court previously explained in *Nungesser v. Columbia University*:

> In order to constitute deliberate indifference, the school's actions must be "clearly unreasonable in light of the known circumstances." This is not a "mere 'reasonableness' standard." Title IX does not require schools to "'remedy' peer harassment" or to "ensure that students conform their conduct to certain rules." "On the contrary, the recipient must merely respond to known peer harassment in a manner that is not clearly unreasonable."

244 F. Supp. 3d 345, 362 (S.D.N.Y. 2017) (Woods, J.) (quoting *Davis*, 526 U.S. at 648-49). In other words, deliberate indifference is a "high standard" that seeks "to eliminate any 'risk that [a university] would be liable in damages not for its own official decision but instead for [another individual's] independent actions.'" *Davis*, 526 U.S. at 643 (quoting *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290-91 (1998)). Because Plaintiff's new allegations do not meet this "high standard"—(1) gender-oriented peer harassment so severe that it (2) deprived Plaintiff of access to educational opportunities or benefits, and (3) the University's actions in response were clearly unreasonable under the circumstances—his "*Davis* harassment" claim should again be dismissed.

*First*, Plaintiff fails to adequately allege peer harassment that was gender-oriented. Apparently in response to this Court's observation that "Plaintiff does not allege that the *Bwog*

16

article contained [gendered slurs]," ECF 34 at 52, Plaintiff newly alleges that he "found on *Bwog*

that his full name had been disclosed [and] that he had been called a 'rapist.'" ¶¶ 127, 216-19. As

an initial matter, this vague allegation lacks sufficient factual detail to "nudge[] the[] claim[] from

conceivable to plausible." *Twombly*, 550 U.S. at 570. Carefully worded in the passive voice, this

allegation does not enable this Court to assess the basic factual circumstances of the use of the

term "rapist" or of this supposed "doxxing." ¶ 127. For example, it is not clear from Plaintiff's

allegations where the term "rapist" was used, who used it, or even when it was printed (if at all).

Plaintiff specifically does not allege that either his name or the word "rapist" appeared in the *Bwog*

article. *See id.* Such "skeletal pleading provides no more than 'naked assertions devoid of further

factual enhancement,'" which a court is not required to credit. *Marcus v. Leviton Mfg. Co., Inc.*,

661 F. App'x 29, 32 (2d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678); *see also Foy v. New York*,

No. 21 Civ. 7647, 2021 WL 4311284, at *3 (S.D.N.Y. Sept. 20, 2021) (Swain. J.).

       But even if Plaintiff's new allegations were pleaded with sufficient specificity (which they

are not), Plaintiff still has not alleged that anything about the *Bwog* article was either gender-

oriented or harassment. Plaintiff cites *Doe v. East Haven Board of Education*, 200 F. App'x 46,

48 (2d Cir. 2006), to support his legal argument that "rapist" is a "sexual slur" sufficient to

constitute harassment on the basis of sex. ¶ 217. But the term "rapist" does not appear anywhere

in that opinion. Rather, in *East Haven*, the court held that the plaintiff—a 14-year-old girl who

reported a rape and was called "a slut, a liar, a bitch, and a whore"—had alleged sexual harassment

because she experienced "verbal abuse that reflects sex-based stereotypes *and* question[ed] the

veracity of her account." 200 F. App'x at 48. By contrast, the facts alleged here suggest only that

the term "rapist" was "used on account of [Plaintiff's] asserted sexual misconduct—to describe

him as a rapist 'in fact,' . . . not because of his gender." *Nungesser*, 244 F. Supp. 3d at 365. Indeed,

Plaintiff's Amended Complaint states as much. *Compare* ¶ 216 ("[Plaintiff] was falsely accused of being a rapist by females") *with Nungesser*, 244 F. Supp. 3d at 366 (finding the term "rapist" was used under the circumstances for its "primary meaning—that is, to accuse him of being a rapist, whether falsely or not"). Plaintiff has not plausibly alleged that he was called a "rapist" because of his gender, rather than because he was accused of rape. *See id.* at 365.

Plaintiff's new allegations concerning Jane Does 1, 2, and 3—namely, that they shared "defamatory" information with *Bwog* editors in "violat[ion]" of the "confidentiality of proceedings," ¶¶ 214, 217, and with the "intent and effect" to harass him, ¶ 127—cannot save Plaintiff's claim either. As an initial matter, contrary to Plaintiff's allegation, Columbia's GBM Policy provides that "Complainants and Respondents . . . are not prevented from discussing the incident(s) that is/are the subject of the disciplinary process." ECF 31-1 (GBM Policy) at 17.[8] And in any event, this Court previously found that the publication of the *Bwog* article was "the operation of a free press, not harassment." ECF 34 at 52; *see also* ¶ 224. Just as *Bwog* publishing the article does not constitute harassment, the Jane Does providing the information that formed the basis for the article does not constitute harassment either—especially where the Jane Does were free to discuss the information they provided with others. *See* GBM Policy at 17. And it certainly does not constitute *gender-oriented* harassment: Plaintiff has not come close to alleging that the Jane Does shared information about Plaintiff because he is a man. To the contrary, Plaintiff alleges the Jane Does released "personally identifiable information for John Doe *alongside the accusation*

---

[8]   "If a plaintiff's own pleadings are contradicted by matters in [documents that may be considered at the pleading stage], the Court need not reconcile this difference or accept the plaintiff's pleadings as true." *Bailey v. N.Y. Law Sch.*, No. 16 Civ. 4283, 2017 WL 6611582, at *7 (S.D.N.Y. Dec. 27, 2017) (Ramos, J.) (collecting cases). This Court previously held that Columbia's GBM Policy is integral to Plaintiff's complaint and so could be considered on the motion to dismiss. *See* ECF 34 at 42. That conclusion holds true for Plaintiff's Amended Complaint, which relies on the GBM Policy at least as much as the original complaint did.

*that he raped them*"—making clear that the information about Plaintiff was shared because of his alleged conduct, rather than his gender. ¶ 217 (emphasis added).[9]

*Second*, even if Plaintiff's allegations relating to the *Bwog* article amounted to gender-based harassment (which they do not), they fall far short of alleging the sort of deprivation of access to educational opportunities or benefits required by Title IX. Plaintiff newly alleges he was "socially ostracized" and "was compelled to resign from clubs and his fraternity out of fear of bad publicity." ¶ 219. But even if Plaintiff subjectively felt uncomfortable in the aftermath of the article's accusations, he still does not allege "a concrete, negative, and systemic effect on his ability to receive an education." *Nungesser*, 244 F. Supp. 3d at 370; *cf. id.* at 369 (finding that other students making the plaintiff uncomfortable and a professor recommending that he drop out of a course were not sufficient to allege deprivation of access to educational opportunities or benefits). Plaintiff's new allegations that he was "only offered meager [academic] support" and not until he requested it, or that his Case Manager did not communicate with him, ¶ 223, are related to his own GBM proceedings, *see infra*, but nevertheless similarly fail to satisfy the applicable pleading standard.[10]

---

[9]    Plaintiff also describes the Jane Does' conduct as "character assassination via leaking," citing *Schwake v. Arizona Board of Regents*, 967 F.3d 940, 949-50 (9th Cir. 2020). His reliance on that case in support of his claim is badly misplaced. In *Schwake*, the court concluded that the plaintiff adequately alleged an "atmosphere of bias" by alleging that a *university official* made statements that "the University had 'convicted [the plaintiff] of sexual assault' and that individuals 'should immediately call the police' if they saw [the plaintiff] in the building" and shared "'graphic' details" and "confidential and privileged information" about the alleged assault and the plaintiff's responsibility. *Id.* Not only did the court in *Schwake* not conclude that the university official's actions constituted harassment, but the allegations in *Schwake* are not *at all* comparable to the allegations here—namely, that student complainants shared information that resulted in an article on a student-run website that accurately reported that Plaintiff was a respondent in multiple GBM proceedings. *See* ECF 34 at 52.

[10]   Plaintiff's allegations, also in his original complaint, that he missed classes to avoid "harassment and [the] burden" of the no-contact orders, ¶¶ 223(iv), 129, are likewise insufficient. Dropping a PE class and not being able to stay after class to ask questions, ¶ 129, do not amount to a deprivation of educational opportunity. *See Nungesser*, 244 F. Supp. 3d at 369, 370.

*Third*, even if Plaintiff were deprived of educational benefits, Plaintiff has not alleged that such deprivation was attributable to a "clearly unreasonable" response by Columbia "in light of the known circumstances." *Davis*, 526 U.S. at 648-49. Although Plaintiff alleges Columbia failed to adequately respond to his complaints of harassment and retaliation, Plaintiff alleges no facts to show that it was "clearly unreasonable" for Columbia—in the course of following its own policies and procedures—to find Plaintiff's complaints against Jane Does 1, 2, and 3 insufficient to justify further proceedings.

Under the GBM Policy, when Columbia receives a report of gender-based misconduct, it must "conduct[] an initial assessment to evaluate whether, if substantiated, the conduct constitutes a Policy violation and whether there is a reasonable basis to engage the disciplinary process." GBM Policy at 21. Plaintiff's allegations amount to an attempt to contest the *result* of that assessment, rather than the reasonableness of Columbia's response. *See Bailey*, 2017 WL 6611582, at *15 (finding failure to state a claim for deliberate indifference where plaintiff challenged the adequacy of the investigation and "resulting disciplinary measures"); *see also Martinetti v. Mangan*, No. 17 Civ. 5484, 2019 WL 1255955, at *5 (S.D.N.Y. Mar. 19, 2019) (Karas, J.) (finding failure to state a claim for deliberate indifference where plaintiff merely "believe[d] a different type of investigation, or a more expansive one, was the appropriate response"). Moreover, while Plaintiff makes vague and confused allegations about the purported length of time it took Columbia to resolve his complaints against the Jane Does, *see* ¶¶ 194, 223(ix), he alleges insufficient facts to suggest the purported delay was "lengthy and unjustified," *see Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 751 (2d Cir. 2003), or the result of more than mere negligence, s*ee Davis*, 526 U.S. at 642-43 (discussing the Court's rejection of "what amounted to a negligence standard" in the Title IX context); *see also HB v. Monroe Woodbury Cent. Sch. Dist.*, No. 11 Civ. 5881, 2012 WL

4477552, at *14 (S.D.N.Y. Sept. 27, 2012) (Seibel, J.) (finding failure to state a claim for deliberate indifference and recognizing that "[t]he [deliberate indifference] standard is not a negligence one").

Perhaps in an attempt to show "clearly unreasonable" conduct, Plaintiff also makes the broad and outlandish allegation that Columbia "imbued the campus atmosphere with gender bias" "through social media." ¶ 219. Columbia showed at great length in its prior motion that Plaintiff's misleading allegations about purported social media postings by "Columbia" should not be taken as true. ECF 28 at 12-14; ECF 33 at 8-10. But even if these allegations were to be taken as true, courts have routinely rejected deliberate indifference claims based on general allegations that a school contributed to "a culture of sexual hostility." *See, e.g.*, *Doe v. Union Coll.*, No. 19 Civ. 284, 2020 WL 1063063, at *5 (N.D.N.Y. Mar. 5, 2020); *Roskin-Frazee v. Columbia Univ.*, No. 17 Civ. 2032, 2018 WL 6523721, at *5 (S.D.N.Y. Nov. 26, 2018) (Daniels, J.); *Raihan v. George Washington Univ.*, 324 F. Supp. 3d 102, 110 (D.D.C. 2018).

Finally, Plaintiff adds various allegations within his "*Davis* harassment" claim regarding Columbia's conduct in his GBM proceedings more generally. ¶¶ 218-19, 223 (referencing, among other things, the no-contact order and interim suspension Columbia imposed in the course of its investigation).[11] But none of these new conclusory allegations plausibly allege a deliberate indifference claim because, as this Court previously held, "a school's investigation of complaints regarding alleged sexual assault is not harassment per se." ECF 34 at 51; *see also Doe v. Quinnipiac Univ.*, 404 F. Supp. 3d 643, 664 (D. Conn. 2019) (holding that a school cannot be liable under a deliberate indifference theory for alleged "flaws in the school's own disciplinary

---

[11]   Plaintiff also throws in allegations that appear to concern his sexual exploitation counterclaim against Jane Doe 1, *see* ¶¶ 219, 223, but this is nothing more than an unnecessary attempt to somehow repackage his Jane Doe 1 selective enforcement claim (Count 5) into a deliberate indifference claim.

process"); *Doe v. Baum*, 903 F.3d 575, 588 (6th Cir. 2018) (same). Put another way, since the actions Plaintiff identifies are actions that Columbia took in response to *Plaintiff's* alleged misconduct, not any alleged peer harassment *against* Plaintiff, they cannot support a deliberate indifference claim.

## CONCLUSION

For the foregoing reasons, Columbia respectfully requests that the Court grant its partial motion to dismiss the Amended Complaint.

Dated: October 7, 2021                    Respectfully submitted,

By:                                              

                    Roberta A. Kaplan
                    Gabrielle E. Tenzer
                    Marcella Coburn
                    KAPLAN HECKER & FINK LLP
                    350 Fifth Avenue, 63rd Floor
                    New York, NY 10118
                    212.763.0883
                    rkaplan@kaplanhecker.com
                    gtenzer@kaplanhecker.com
                    mcoburn@kaplanhecker.com

                    *Attorneys for Defendant The Trustees of*
                    *Columbia University in the City of New York*

**APPENDIX A: Bars to Relief on Each Count of the Amended Complaint**

<u>Claims previously dismissed in their entirety that should be dismissed again</u>

| Count | Standing | Mootness | Res Judicata | Collateral Estoppel | Failure to State a Claim |
|---|---|---|---|---|---|
| **Count 2:** Selective Enforcement (Interim Suspension) | No Diploma-Related Relief | No Diploma-Related Relief | | | No Relief at All |
| **Count 3:** "*Davis* Harassment" (Interim Suspension) | No Diploma-Related Relief | No Diploma-Related Relief | | | No Relief at All |
| **Count 4:** Erroneous Outcome (Jane Doe 1) | No Diploma-Related Relief | No Diploma-Related Relief | No Injunctive Relief | No Relief on Any Issues Previously Litigated | No Relief at All |

<u>Claims partially dismissed that should remain partially dismissed</u>

| Count | Standing | Mootness | Res Judicata | Collateral Estoppel | Failure to State a Claim |
|---|---|---|---|---|---|
| **Count 1:** Erroneous Outcome (Interim Suspension) | No Diploma-Related Relief | No Diploma-Related Relief | | | |
| **Count 5:** Selective Enforcement (Jane Doe 1) | No Diploma-Related Relief | No Diploma-Related Relief | No Injunctive Relief | | |
| **Count 6:** Erroneous Outcome (Jane Doe 4) | No Diploma-Related Relief | No Diploma-Related Relief | No Injunctive Relief | | |
| **Count 7:** Erroneous Outcome (Jane Doe 3) | No Diploma-Related Relief | No Diploma-Related Relief | | | |

"<u>Diploma-related relief</u>" includes granting the diploma, removing the disciplinary expulsion notation from the transcript, and any damages arising from the lack of a diploma.

"<u>Injunctive relief</u>" includes vacating GBM disciplinary findings, granting the diploma, removing the disciplinary notation from the transcript, and enjoining future violations of Title IX in re-adjudicating these incidents.