**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------x

| | |
|---|---|
| JOHN DOE, | Case No.  1:20-cv-06770-GW |
| Plaintiff, | |
| v. | |
| COLUMBIA UNIVERSITY, | |
| | Oral Argument Requested |
| Defendant. | |

--------------------------------------------------------x

## PLAINTIFF JOHN DOE'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE AMENDED COMPLAINT

**NESENOFF & MILTENBERG, LLP**
**Of Counsel: Philip A. Byler / Andrew T. Miltenberg**
**363 Seventh Avenue, Fifth Floor**
**New York, New York 10001**
**(212) 736-4500**
**Attorneys for Plaintiff John Doe**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES …………………………………………………………………iii

INTRODUCTION …………………………………………………………..……....…1

RESPONSE TO COLUMBIA'S "RELEVANT BACKGROUND"……………………….....4

ARGUMENT ……………………………………………………..………………….....5

I.     THE AMENDED COMPLAINT'S JANE DOE 1 ERRONEOUS
OUTCOME CAUSE OF ACTION (THE 4th CAUSE OF ACTION)
SHOULD BE REINSTATED………………………….…………………………......5

    A.  John Responded To And Conceded Nothing As To Columbia's Argument
There Was A Failure To Plead "Irregularities" For "Gender Bias," Which
Argument Housed Columbia's Invoking Of Collateral Estoppel; No *Res
Judicata*: *Menaker v. Hofstra* "Irregularities" Showing Gender Bias Are
Outside State Law Article 78 Jurisdiction…………………………………..…………5

    B.  Applying Collateral Estoppel Here Is Contrary To Basic Elements Of The
Doctrine (Not The Same Issue and Not Actually Litigated), Which Results
From Columbia's Mistaken Notion Of *Menaker v. Hofstra* "Irregularities,"
Ignoring John's Denial Of *Res Judicata* Due To Gender Bias Non-Justiciability
Under Article 78, and Citing Inapposite Case Law…………………………………7

    C.  John's Gender Bias Argument With Respect To The Jane Doe 1
Erroneous Outcome Claim And All His Title IX Claims Was Much
More Than Columbia's Notion Of *Menaker v. Hofstra* "Irregularities"………………9

       1.  The 2011 Dear Colleague Letter ("2011 DCL")…………………………………..9

       2.   Columbia's Gender-Based Misconduct Policy As "Victim-Centered"………….10

       3.   Columbia's Social Media Statements…………………………………………11

II.    THE AMENDED COMPLAINT STATES A MERITORIOUS CAUSE
OF ACTION FOR SELECTIVE ENFORCEMENT AS TO THE INTERIM
SUSPENSION (THE 2nd CAUSE OF ACTION)………………………………......……12

III.   THE AMENDED COMPLAINT STATES A MERITORIOUS CAUSE
OF ACTION FOR *DAVIS* HARASSMENT AS TO THE INTERIM
SUSPENSION (THE 3rd CAUSE OF ACTION)………………………………….…..15

i

IV.     JOHN ALLEGES TRACEABILITY: HE HAS STANDING TO SEEK DAMAGES FOR THE EXPULSION AND DENIAL OF THE DIPLOMA HE EARNED; SUCH RELIEF IS NOT MOOT……………………….…………..20

     A.  Amendments To Establish Traceability and Dispel Mootness…………….……20

     B.  Columbia's Meritless Lack of Standing and Mootness Arguments………………22

        1.  The Meritless Traceability/Standing Objection……………………….………...22

           a.  Ignoring Linkage of Columbia's Discriminatory Conduct and E-Mail Hacking……………………………………………………..23

           b.  Blaming John Instead Of Columbia's Deliberate Indifference…………..23

        2.  The Meritless Mootness Objection…………….…………………………………24

V.     PRIOR JANE DOES 1 AND 4 ARTICLE 78 PROCEEDINGS AND INJUNCTIVE RELIEF IN THIS CASE………………………………….…………25

CONCLUSION ……………………………………………………………...……………...…25

## **TABLE OF AUTHORITIES**

**Page**

**Cases**

*AT&T Corp. v. Syniverse Techs., Inc.*, 2014 WL 4412392 (S.D.N.Y. Sept. 8, 2014)...............8

*Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572 (D.C. Cir. 2013)...........................................17

*Bandler v. Town of Woodstock*, 832 F.App'x 733 (2d Cir. 2020) ...................................24

*Bostock v. Clayton County, Georgia*, 140 S. Ct. 1731 (U.S. 2020)....................................17

*Brown v. Daikin Am. Inc.*, 756 F.3d 219 (2d Cir. 2014)...........................................13, 14

*Chapin v. Chapin*, 568 U.S. 165 (2013) ...............................................................24

*City of Los Angeles v. Lyons,* 461 U.S. 95 (1983).......................................................24

*Crawford v. Nat'l R.R. Passenger Corp.*, 2015 WL 8023680 (D. Conn. Dec. 4, 2015)............18

*Davidson v. Capuano*, 792 F.2d 275, 280 (2d Cr. 1986)............................................25

*Davis v. Monroe County Bd. of Education*, 526 U.S. 629 (1999)...............................15-19

*Doe v. Baum*, 903 F.3d 575 (6th Cir. 2018)..........................................................10

*Doe v. Columbia*, 831 F.3d 46 (2d Cir. 2016)............................................ 4, 6, 9, 16, 18

*Doe v. East Haven Bd. of Educ.*, 200 F. App'x 46 (2d Cir.2006)................................16-17

*Doe v. New York University*, 2021 WL 1226384 (Mar. 3, S.D.N.Y. 2021) ......................13, 16

*Doe v. Purdue*, 928 F.3d 652 (7th Cir. 2019).. ....................................................10, 12

*Doe v. Syracuse*, 2019 WL 2021026 (N.D.N.Y. May 8, 2019)........................................10

*Doe v. Syracuse*, 2020 WL 2513691 (N.D.N.Y. May 15, 2020) ....................................10

*Doe v. University of Denver*, 1 F.4th 830 (10th Cir. 2021)......................................11, 18

*Graham v. Long Island R.R.*, 230 F.3d 34 (2d Cir. 2000)........................................13, 14

*Huddy v. F.C.C.,* 236 F.3d 720 (D.C.Cir.2001).................................................... 22

*Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 405 (7th Cir. 2007)...............................15

*In re Hofmann*, 287 A.D.2d 119, 733 N.Y.S.2d 168 (1st Dep't 2001)..................................9

*In re UBS AG Secs. Litig.*, 2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012)…………………..……8

*Jennings v. Hunt Cos.*, 367 F.Supp.3d 66 (S.D.N.Y. 2019)………………………………..………8

*Karamoko v. New York City Hous. Auth.*, 170 F.Supp.2d 372 (S.D.N.Y. 2001)…….............3, 6, 25

*Mahmood v. Research in Motion Ltd.*, 905 F. Supp. 2d 498 (S.D.N.Y. 2012),
     *aff'd*, 515 F. App'x 891 (Fed. Cir. 2013)………………………………………………….……7

*Marvel Characters, Inc. v. Simon,* 310 F.3d 280 (2d Cir. 2002)…………………………………..…7

*McAlester v. United Air Lines, Inc.*, 851 F.2d 1249 (10th Cir. 1988)……………………………15

*McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273 (1976)…………………………………15

*Menaker v. Hofstra,* 935 F.3d 20 (2d Cir. 2019)………………………………..…………2, 6, 7, 18, 19

*Mishkin v. Ageloff*, 299 F. Supp.2d 249 (S.D.N.Y. 2004)…………………………………………7

*Nat. Res. Def. Council v. U.S. Food & Drug Admin.*, 710 F.3d 71 (2d Cir. 2013)………………24

*NLRB v. Thalbo Corp.,* 171 F.3d 102 (2d Cir. 1999)……………………………….………………..7

*Norris v. Univ. of Colorado, Boulder*, 362 F.Supp.3d 1001, 1013 (D. Colo. 2019)………..……10

*Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89(2d Cir. 1999)…………………………………13

*Nungesser v. Columbia*, 169 F.3d 353 (S.D.N.Y. 2016)………………………………….....17-18

*Papelino v. Albany Coll. of Pharmacy*, 633 F.3d 81 (2d Cir. 2011)………….………….……19

*Riccio v. New Haven Bd. of Educ.*, 467 F.Supp.2d 219 (D. Conn. 2006)……………….....17, 18

*Rodriguez v. Town of Ramapo*, 412 F. Supp.3d 412 (S.D.N.Y. 2019).........................................15

*Rothstein v. UBS AG,* 772 F.Supp.2d 511 (S.D.N.Y. 2011), aff'd,
     708 F.3d 82 (2d Cir. 2013)……………………………………………………………22

*Schwake v Arizona Bd. of Regents*, 967 F.3d 940 (9th Cir. 2020) …………………………19

*Taylor v. F.D.I.C.*, 132 F.3d 753 (D.C. Cir. 1997)………………………………………………24

*Union Cosmetic Castle Inc. v. Amorepacific Cosmetics USA Inc.*,
     454 F.Supp.2d 621 (E.D.N.Y. 2006) ……………………………………………24

*Univ. of Tex. SW Medical Center v. Nassar*, 570 U.S. 338 (2013).................................18

*Weslowski v. Zugibe*, 14 F. Supp.3d 295 (S.D.N.Y. 2014)............................................................15

## Constitutional Provisions, Statutes and Rules

Article III, U.S. Constitution ……………………………………………………..…..21-25

New York CPLR Article 78…………………………………………………...…….2, 3, 5-8, 13, 25

Rule 12(b)(6), Federal Rules of Civil Procedure……………..……………………….………1, 25

Rule 54(b), Federal Rules of Civil Procedure …………………………….…………….1, 2, 5

Rule 60, Federal Rules of Civil Procedure……………………………….……………………..1

Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681 *et seq*……..….………*passim*

Southern District of New York Local Rule 6.3…………………………………..…………….1

34 CFR 106.30(a)(2)…………………………………………………………….……15-16

34 CFR 106.30(a)(3)…………………………………………………………….…..…………15

## Other Authorities

Dear Colleague, Department of Education Office for Civil Rights, Apr. 4, 2011,
    https://www2.ed.gov/about/offices/list/ocr/letters/colleague-201104.html .........................10

## INTRODUCTION

Plaintiff John Doe ("John") submits this Memorandum of Law in opposition to the Rule 12(b)(6) partial motion to dismiss by Defendant Columbia University ("Columbia"), which is addressed only to the 2nd, 3rd and 4th Causes of Action and certain relief in John's Title IX Amended Complaint.  (ECF 46-47.)  As explained herein, Columbia's motion should be denied.

Columbia's Preliminary Statement in its Brief contains three incorrect propositions.

*First*, Columbia erroneously chastises John's counsel for disregarding the Court's August 1, 2021 Opinion and Order.  John has not done so: Columbia omits the facts leading to the filing of the Amended Complaint (ECF 41).  The Court's August 1, 2021 Opinion and Order (ECF 34) granted in part and denied in part Columbia's motion to dismiss John's original Complaint and granted leave to replead while indicating certain amendments would be futile.  In response, John timely made, on August 16, 2021, two filings: (i) an Amended Complaint (ECF 35) pursuant to leave granted in the Court's August 1, 2021 Opinion and Order; and (ii) a Motion for Reconsideration pursuant to Rules 54(b) and 60 of the Federal Rules of Civil Procedure and Local Rule 6.3 (ECF 36) to address what the Court said was futile and how the Amended Complaint rectified the shortcomings of some the pleaded causes of action identified by the Court.  Columbia counsel objected in a letter dated August 18, 2021 (ECF 37), citing a case in which a motion to dismiss was granted in full and the plaintiff filed both an Amended Complaint and a motion for reconsideration -- which was not our situation.  John's counsel filed a letter dated August 18, 2021 (ECF 38), explaining the procedure employed was to deal with the Court's partial grant and partial denial of Columbia's motion and that the case cited by Columbia was not on point.  (Byler Decl. ¶¶ 3-4 & Ex. A.)  The Court then held a conference on August 26, 2021, at which John's counsel stated that John would withdraw the motion for reconsideration and deal with the issues in response to Columbia's anticipated motion to dismiss the Amended Complaint and after a decision by the

1

Court on that motion, deal if need be with a motion for reconsideration.  The Court accepted that procedure and granted leave to file a properly redacted Amended Complaint (ECF 40), and John filed the properly redacted Amended Complaint (ECF 41).  (Byler Decl. ¶ 5 & Ex. B.)  John's proposed procedure, accepted by the Court, is fully authorized by Rule 54(b) of the Federal Rules of Civil Procedure, which provides in pertinent part that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."

This is important because the Amended Complaint's Jane Doe 1 erroneous outcome claim (the 4th Cause of Action) is not properly subject to dismissal on the ground of collateral estoppel. John responded to and conceded nothing as to Columbia's argument there was a failure to plead "irregularities" for "gender bias" within the meaning of *Menaker v. Hofstra*, 935 F.3d 20 (2d Cir. 2019) ("*Menaker*"); it was that argument which housed Columbia's invoking of collateral estoppel; John denied *res judicata* of state law Article 78 proceedings to Title IX gender bias; applying collateral estoppel is contrary to the basic elements of the doctrine (no identity of issue and no actual litigation); further, the pleadings as to gender bias, including social media postings, allege facts outside Columbia's mistaken notion of "irregularities." Additionally, John's selective enforcement and harassment claims as to the interim suspension (the 2nd and 3rd Causes of Action) are not properly subject to dismissal given that the Amended Complaint now states well pleaded claims, and John does allege traceability: he has standing to seek damages for the expulsion and denial of diploma he earned and such relief is not moot.

*Second*, Columbia summarizes the case contrary to basic motion to dismiss rules, spinning the e-mail hacking and denial of diploma as distinct from the gender-based misconduct rulings, which is not how the Amended Complaint treats these subjects.  The Amended Complaint alleges

the e-mail hacking and denial of diploma were traceable to the deliberate indifference Title IX discrimination.  In John's last semester of his senior year, four female complainants made sexual misconduct allegations.  Although most of those allegations were old and so lacking in merit they had to be dismissed, John was put on interim suspension based on allegations alone, with no notice, no hearing, no appeal, right after John filed a counter-complaints alleging sexual misconduct against one of the female complainants and harassment against three of them. John's counter-complaints were wrongly summarily rejected; the sexual misconduct allegations for which John was found responsible required gender bias to reach.  In these circumstances, the Amended Complaint alleges that John suffered a serious psychological toll, felt under siege, was severely depressed and entertained suicidal thoughts as a result of his deprivation of educational opportunity and isolation amidst facing four unfounded sexual misconduct disciplinary cases suddenly arising during his last semester. Columbia, however, evinced no concern and failed to offer counseling to a male respondent facing four disciplinary cases, and Columbia's case manager assigned to John failed to even communicate with him.  To that Title IX discrimination, the email hacking and expulsion/denial of diploma was traceable.  John had earned the diploma, as he had passed his final exams with flying colors; it is not moot to remedy the denial of a diploma earned by John.

*Third*, one would not know from Columbia's brief that the law is that a plaintiff such as John is not barred by the res judicata of a prior state law Article 78 proceeding from bringing a subsequent federal law-based suit.  *Karamoko v. New York City Hous. Auth.*, 170 F.Supp.2d 372, 377 (S.D.N.Y. 2001) (Chin, J.).  Here, the entire basis of the state law Article 78 proceedings were claimed violations of Columbia's Gender Biased Misconduct Policies with respect to two Jane Does, which does not define the subject of federal law Title IX violations and which does not address the majority, let alone the entirety, of this case.

3

### RESPONSE TO COLUMBIA'S "RELEVANT BACKGROUND"

Under motion to dismiss rules stated in *Doe v. Columbia*, 831 F.3d 46, 48-49 (2d Cir. 2016), the 140-page Title IX Amended Complaint (ECF 41) provides the proper reference point, not Columbia's statement of "Relevant Background" (ECF 47: Df. Mem. 3-6) for four reasons.

*First*, Columbia's current statement of "Relevant Background" incorporates from Columbia's Memorandum of Law to dismiss the original Complaint, the "Relevant Factual and Procedural Background" (ECF 28: pp. 2-12), which John's Memorandum of Law opposing Columbia's original motion showed did not fairly state the case under motion to dismiss law while John's previous "Statement of the Case" did (ECF 32: Pl. Mem. 2-15).

*Second*, Columbia's current "Relevant Background" statement disparages, erroneously, the amendments as: (i) legal argument (stating facts that establish a legal conclusion does not alter that factual allegations are made); and (ii) devoid of detail (that assertion is just false).

*Third*, Columbia's current "Relevant Background" statement is mostly erroneous legal argument. As discussed below (pp. 15-20), the Amended Complaint's allegations establish linking the e-mail hacking to Columbia's Title IX discrimination against John.  As discussed below (pp. 13-15), the Amended Complaint's allegations establish comparator status of each Jane Doe 1-3 for the selective enforcement claim as to the interim suspension.  As discussed below (pp. 15-19), the Amended Complaint's allegations establish the harassment claim as to the interim suspension and are anything but "barebones" and "insufficient."

*Fourth*, Columbia's current "Relevant Background" statement tries to say additional allegations are irrelevant as supporting claims that are futile to amend or relate to gender bias of claims that were not dismissed.  As discussed below (pp. 5-13), the additional allegations as to gender bias make them relevant to the Jane Doe 1 erroneous outcome claim and provide one of a number of reasons why collateral estoppel is precluded from being applied to that claim.

4

**ARGUMENT**

I.   **THE AMENDED COMPLAINT'S JANE DOE 1 ERRONEOUS OUTCOME CAUSE OF ACTION (THE 4th CAUSE OF ACTION) SHOULD BE REINSTATED.**

Columbia's first main argument is that John has ignored the Court's ruling that he cannot replead the claims barred by res judicata or collateral estoppel.  (ECF 47: Df. Mem. 6-7.)  The Court dismissed the Jane Doe 1 erroneous outcome claim (the Complaint's 4th Cause of Action) on the ground that John did not contest Columbia's collateral estoppel argument and thus did not have a basis for arguing "irregularities" showing the gender bias necessary for the claim.  (ECF 34: pp 52-53.)  Respectfully, three dispositive points call for the Jane Doe 1 erroneous outcome claim to be reinstated, and Fed.R.Civ.P. 54(b) gives the Court the authority to rule differently.

A.   **John Responded To And Conceded Nothing As To Columbia's Argument There Was A Failure To Plead "Irregularities" For "Gender Bias," Which Argument Housed Columbia's Invoking Of Collateral Estoppel; No *Res Judicata*: *Menaker v. Hofstra* "Irregularities" Showing Gender Bias Are Outside State Law Article 78 Jurisdiction.**

The first dispositive point is that John responded to and conceded nothing as to Columbia's argument in which collateral estoppel was asserted and on which collateral estoppel was premised. It was in connection with the issue of gender bias that Columbia at pages 31-32 of its motion to dismiss brief (ECF 28) argued collateral estoppel -- that John had an opportunity to litigate, in the New York State Article 78 proceeding, compliance with Columbia's Gender Based Misconduct Policy ("GBMP") and thus was foreclosed from arguing "irregularities" to establish gender bias required for the claim.  Pages 31-32 of Columbia's Motion To Dismiss Brief appears in a section of Columbia's Motion To Dismiss Brief entitled "Plaintiff Does Not Allege the Kind of Clear Irregularities Necessary to Create an Inference of Gender Bias" (ECF 28: pp. 28-35).   To Columbia's argument, however, John fully responded, conceding nothing, in his Opposition Brief in a section entitled "Plaintiff More Than Adequately Pleads Gender Bias" (ECF 32: pp. 29-38)

and specifically in a subsection entitled "Plaintiff Alleges The Kind of 'Irregularities' Necessary

To Create An Inference of Gender Bias" (ECF 32: pp. 35-38).

As pointed out in John's Opposition Brief (ECF 32: pp. 35-36), the crux of the problem is

that Columbia errs by narrowly limiting the "irregularities" discussed in *Doe v. Columbia*, 831

F.3d 46, and *Menaker*, 935 F.3d 20, to procedural irregularities with respect to applying

Columbia's GBMP (ECF 28: pp. 29-35).  A far broader category of "irregularities" is meant:

> [W]e need not define precisely what sort of irregularities meet the standard
> of "clearly irregular investigative or adjudicative process."  But we note that *Doe
> v. Columbia* offers some guidance on this issue. For instance, "[w]hen the evidence
> substantially favors one party's version of a disputed matter, but an evaluator forms
> a conclusion in favor of the other side (without an apparent reason based in the
> evidence), it is plausible to infer (although by no means necessarily correct) that
> the evaluator has been influenced by bias." Similarly, where decision-makers
> choose "to accept an unsupported accusatory version over [that of the accused], and
> declined even to explore the testimony of [the accused's] witnesses," this too "gives
> plausible support to the proposition that they were motivated by bias."

*Menaker*, 935 F.3d at 34 (footnotes omitted).  Thus, investigative or adjudicative irregularities

within the meaning of *Menaker* is not a state law question of compliance with Columbia's GBMP,

but rather a federal law question of compliance with Title IX of Columbia's disciplinary process.

In John's Opposition Brief, before discussing the point that John Doe had alleged the kind

of "irregularities" necessary to create an inference of gender bias (ECF 32, pp. 35-38), John argued

strenuously that *res judicata* did not apply to John Doe's Title IX claims (ECF 32, p. 24):

> Plaintiff [John] now brings only federal law issues (*e.g*, gender bias, which
> is non-justiciable under Article 78) and new facts (the Article 78 proceedings did
> not concern Jane Does 2-3). Further, "Article 78 courts are courts of limited
> jurisdiction and are unable to award monetary damages." *Karamoko v. New York
> City Hous. Auth.*, 170 F.Supp.2d [372,] at 377 [(S.D.N.Y. 2001)]. Here, one of the
> Article 78 proceedings ruled that Defendant was not arbitrary or capricious in
> following its own rules (the state law Article 78 standard), but did not rule and was
> not authorized by law to rule whether gender discrimination affected the conduct
> of and decisions from Defendant [Columbia]'s procedures (the federal law Title IX
> standard); the other Article 78 proceeding was a stipulated dismissal with no
> findings and was not authorized by law to make findings on sex discrimination.

**B. Applying Collateral Estoppel Here Is Contrary To Basic Elements Of The Doctrine (Not The Same Issue and Not Actually Litigated), Which Results From Columbia's Mistaken Notion Of *Menaker v. Hofstra* "Irregularities," Ignoring John's Denial Of *Res Judicata* Due To Gender Bias Non-Justiciability Under Article 78, and Citing Inapposite Case Law.**

The second dispositive point is that applying collateral estoppel here is contrary to the basic elements of the doctrine where there was no identity of issue and no actual litigation. Southern District Judge Marrero, relying upon Second Circuit law, defined collateral estoppel in *Mishkin v. Ageloff*, 299 F. Supp.2d 249, 252–253 (S.D.N.Y. 2004):

> For collateral estoppel to apply, the court must find that (1) "the issues in both proceedings are identical; (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits." [*NLRB v.*] *Thalbo Corp.,* 171 F.3d [102,] at 109 [(2d Cir. 1999)].

Given what John argued concerning (i) Columbia's misreading of *Menaker* as to "irregularities" being only a matter of Columbia GBMP deviations and (ii) Columbia's attempt to misapply *res judicata* that disregarded gender bias as a federal law issue non-justiciable under state Article 78, there could be no identity of issue that was actually litigated in an Article 78 proceeding for collateral estoppel to apply. "To be barred by collateral estoppel, an issue must be identical with one actually litigated, actually decided, and necessary to the holding in a previous action." *Mahmood v. Research in Motion Ltd.*, 905 F. Supp. 2d 498, 502 (S.D.N.Y. 2012) (Forrest, J.), *aff'd*, 515 F. App'x 891 (Fed. Cir. 2013), citing *Marvel Characters, Inc. v. Simon,* 310 F.3d 280, 288–289 (2d Cir.2002).  Applying collateral estoppel here is flatly contrary to basic elements of the doctrine and flies in the face of what John argued concerning the proper reading of *Menaker* as to "irregularities" and gender bias and what John argued as to why *res judicata* does not apply. There was no silence here on John's part suggesting concession or abandonment concerning "irregularities" and gender bias.

7

The three cases cited by the Court for when courts have treated silence as deeming concession are night and day wholly different.  In *AT&T Corp. v. Syniverse Techs., Inc.*, 2014 WL 4412392 (S.D.N.Y. Sept. 8, 2014), in a contract dispute, AT&T did not argue disputed credits on summary judgment when AT&T needed to do so if it was seeking to sustain them. In *In re UBS AG Secs. Litig.*, 2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012), a securities fraud case, the Amended Complaint did not contain an allegation of actionable misstatement by two executives named as defendants when the Amended Complaint needed to do so if the two executives were going to be held for securities fraud.  In *Jennings v. Hunt Cos.*, 367 F.Supp.3d 66 (S.D.N.Y. 2019), the plaintiff expressly conceded, in light of the relevant law, the plaintiff's Labor Law, breach of the covenant of good faith and punitive damages claims in response to the defendant's motion to dismiss.

Whether Columbia was or was not arbitrary or capricious in following its own GBMP, which is the state law Article 78 inquiry, does not determine whether Columbia did or did not engage in sex discrimination in its sexual misconduct disciplinary decision-making, which is the federal law Title IX inquiry; and, indeed, the latter inquiry is not authorized to be conducted in Article 78 proceedings.  A state law conclusion that Columbia was not arbitrary or capricious with respect to applying its own rules when judging incapacitation and consent, deciding whether to investigate a male's complaint about sexual exploitation by a female, and judging credibility does not present the same issues as are presented in this Title IX case when a determination is made as to whether sex was a basis for the disciplinary decision and its treatment of the facts.  A jury could rationally determine that however Columbia wishes to interpret its rules, Columbia's gender biased victim-centered procedures and Columbia's gender biased campus culture (ECF 41: ¶¶ 61-67, 77-107 above) resulted in gender biased erroneous outcome and enforcement decisions reflecting a different assessment of incapacitation, consent, the decision not to investigate a male's complaint

about sexual exploitation by a female when female complaints are investigated, and credibility than what might be said was not arbitrary or capricious under Columbia's rules.

The misuse of collateral estoppel here means applying it contrary to the basic elements of the doctrine where there was no identity of issue and no actual litigation that cuts off the litigation of a federal law issue of gender bias.   The doctrine of collateral estoppel "is based on general notions of fairness," *In re Hofmann*, 287 A.D.2d 119, 123, 733 N.Y.S.2d 168, 172 (1ˢᵗ Dep't 2001), and its misuse here is contrary to those basic notions of fairness.

### C.  John's Gender Bias Argument With Respect To The Jane Doe 1 Erroneous Outcome Claim And All His Tile IX Claims Was Much More Than Columbia's Notion Of *Menaker v. Hofstra* "Irregularities."

The third dispositive point is that the dismissal of the erroneous outcome Jane Doe 1 claim (the Complaint's 4th Cause of Action) is also, respectfully, in error because, as the Court seemed to overlook and/or failed to perceive, John argued a series of points showing gender bias other than Columbia's mistaken notion of "irregularities" premised on Columbia's incorrect reading of *Menaker*.   As discussed in John's Opposition Brief against Columbia's first motion to dismiss (ECF 32: pp. 27-38), John made clear that his allegations of gender bias were far more broad based than just Columbia's notion of *Menaker* irregularities, describing his allegations as falling into three additional categories: (1) the 2011 Dear Colleague Letter; (2) Columbia's gender-based misconduct policy as "victim-centered"; and (3) Columbia's social media statements about such subjects as "believe all women," rape culture and the #MeToo Movement.   These allegations applied to all of John's Title IX claims, including the Jane Doe 1 erroneous outcome claim (4th Cause of Action).   (ECF 32: pp. 27-38.)

1.   __The 2011 Dear Colleague Letter ("2011 DCL").__   To use the wording of the Amended Complaint here, the 2011 DCL provided "a necessary set of background facts to this action" (ECF 14: ¶ 23), in accordance with the Seventh Circuit ruling that "the [2011] Dear

Colleague letter 'provides a backdrop that, when combined with other circumstantial evidence of bias in [a] specific proceeding, gives rise to a plausible claim,'" *Doe v. Purdue*, 928 F.3d 652, 669 (7ht Cir. 2019), quoting *Doe v. Baum*, 903 F.3d 575, 586 (6th Cir. 2018).  It is alleged the 2011 DCL is relevant because Columbia has continued to follow its pre-rescission disciplinary procedures in this case (ECF 41: ¶ 74), and such adherence was a factor supporting gender bias.

  **2.**  <u>**Columbia's Gender-Based Misconduct Policy As "Victim-Centered."**</u> The Amended Complaint alleges that: Columbia adopted policies and procedures favoring students who file complaints of sexual misconduct and denying fundamental protections to accused students; Columbia trains its officials to assume complaints of sexual misconduct are valid; trauma-informed techniques based on pseudoscience allow authority figures to encourage alleged victims to create exaggerated or false memories; investigators are taught that an alleged victim's inability to recall crucial events and changing stories should not raise doubts about the veracity of an allegation; the phrase "believe all women" means that when a female accuses a male of sexual misconduct, she is a "survivor" and her accusations are presumptively true. (ECF 41, ¶¶ 61-67, 80-93.)  Cases recognize allegations of trauma-investigation techniques give rise to an inference of gender bias.  *Norris v. Univ. of Colorado, Boulder*, 362 F.Supp.3d 1001, 1013 (D. Colo. 2019); *Doe v. Syracuse*, 5:18-cv-377 (DNH), 2019 WL 2021026 (N.D.N.Y. May 8, 2019); *Doe v. Syracuse*, 5:19-cv-1467 (TJM), 2020 WL 2513691 (N.D.N.Y. May 15, 2020).

  As discussed in John's original Opposition Brief (ECF 32: pp. 34-35), the facts alleged as to John's disciplinary cases and interim suspension are illustrations of a gender biased victim-centered and trauma-informed process.  If the system is victim-centered, it is not neutral and impartial; and the norm at Columbia (as pleaded) and elsewhere is that females are the "victim" complainants and males are the "accused" respondents; Columbia's victim-centered process thus in reality advantages females and universities are responsible for the fairness of their procedures.

(ECF 41: ¶¶ 61-67, 80-93.)  Indeed, the express conception of these campus sexual misconduct tribunals, as evidenced by the 2011 DCL history, has been to protect women.  (ECF 41: ¶¶ 25-29.) *See Doe v. University of Denver*, 1 F.4th 822 (10th Cir. 2021) ("*Denver II*") (the difference in treatment of complaints -- complaints by males not investigated and rejected versus complaints by females investigated and sustained -- supports inference of gender bias). In connection with the Jane Doe 1 erroneous outcome claim, the Amended Complaint (ECF 41: ¶ 230) references Columbia's victim-oriented procedures described in the Amended Complaint.

**3.**     **Columbia's Social Media Statements.** John's original Opposition Brief contained a discussion of why Columbia's social media postings support a case of gender bias.  (ECF 32: pp. 15-19.)  The Amended Complaint contains allegations (ECF 41: ¶¶ 77-107) based on content found on Columbia's social media, without disclaimer.These posts concern: Columbia's victim-centered, trauma-informed sexual misconduct disciplinary process (citing to articles written or featuring remarks by Columbia's then Vice President Suzanne Goldberg); Columbia's endorsement of "Believe All Women" (citing posts by the Sexual Violence Response office, "SVR"); denunciation of the "rape culture" (citing posts by SVR); support of the #MeToo Movement (citing to posts by SVR); and Columbia's culture (citing to an article by Columbia's President and a Vice President).

Columbia has argued it that should not be held to statements of its SVR office endorsing "Believe All Women, denouncing the "rape culture" and supporting the #MeToo Movement, and the Court appears to have not accepted on the original motion Columbia's annual report (ECF 43, pp. 41-43) showing SVR is part and parcel of Columbia's gender-based misconduct response.  The Amended Complaint (ECF 41, ¶¶ 77-79), however, rectifies that situation by pleading:

> 77.  Sexual Violence Response (known as "SVR") is part and parcel of Columbia's gender-based misconduct response. Defendant's annual publication Student Gender-Based Misconduct Prevention & Response 2019-2020, pp. 2-7, lists SVR along with the Title IX office as part of Columbia's gender-based misconduct response with a whole section discussing what SVR does, including

sexual violence response training. Columbia's own prioritization within their Title IX hierarchy, as the office is listed first among "major resources for preventing and responding to gender-based misconduct."  SVR reached 16,511 students, faculty, staff and others at Defendant for 2018-2019 and had and has content linked to Columbia's general website: see, e.g., "Sexual Assault Awareness Month," https://web.archive.org/web/ 20190407185307/https://health. columbia.edu/saam.

78. SVR's outreach is not limited to in-person events. Columbia's social media activity, especially via SVR, is an official tool of "community action"; SVR's Facebook page, in particular, is monitored and used to advertise events, services and share other content. . . .

Thus, right on point is *Doe v. Purdue*, 928 F.3d 652, 669 (7th Cir. 2019) (Barrett, J.), in ruling that proof of Purdue's gender bias as an institution affecting the disciplinary decision was found in the social media posting of a *Washington Post* article shared by Purdue's Center for Advocacy, Response and Education ("CARE").  Purdue's sexual assault center CARE is roughly equivalent to Defendant's sexual violence response center SVR.  As discussed in John's original Opposition Brief (ECF 32: pp. 17-19), *Doe v. Purdue* cannot be distinguished.  The Amended Complaint (ECF 41: ¶ 234) references the social media postings cited and described in the Amended Complaint in connection with the erroneous outcome Jane Doe 1 claim.

## II. THE AMENDED COMPLAINT STATES A MERITORIOUS CAUSE OF ACTION FOR SELECTIVE ENFORCEMENT AS TO THE INTERIM SUSPENSION (THE 2nd CAUSE OF ACTION).

The Court dismissed the selective enforcement interim suspension claim (the 2nd Cause of Action) on the ground that the female comparators Jane Does 1-3 were not legally equivalent in all material respects to John: that the quantity and nature of the complaints were not the same. (ECF 34: pp. 49-50, 54.)  Respectfully, John has sought to establish that John and Jane Does 1-3 were "similarly situated" because: (i) the female comparators Jane Does 1-3 individually and separately filed their complaints against John, (ii) only unsubstantiated allegations existed at the time of the "interim" suspension with respect to both John and Jane Does 1-3, (iii) John was in good academic and disciplinary standing when he was suspended based only on allegations, and

(iv) no female student at Columbia who has been made the subject of a sexual misconduct proceeding was subject to an interim suspension based solely on allegations. (ECF 41: ¶¶ 206-209.)  Contrary to Columbia's argument (ECF 47: Df. Mem. 13-15), the Amended Complaint does add allegations to make clearer how the female comparators Jane Does 1-3 were "similarly situated" to John in all material respects as to the interim suspension.

Given the paucity of precedent under Title IX as to what "similarly situated" in all material respects means, this Court has recognized that Title VII cases must be considered. *Doe v. New York University*, 2021 WL 1226384, *21 (S.D.N.Y. Mar. 3, 2021), citing *Brown v. Daikin Am. Inc.*, 756 F.3d 219 (2d Cir. 2014) (Japanese and American employees were found similarly situated), and *Graham v. Long Island R.R.*, 230 F.3d 34 (2d Cir. 2000) (African-American and white employees were found similarly situated).  *Brown*, 756 F.3d at 230, quoted *Graham*, 230 F.3d at 39, stating that "[t]he plaintiff's and comparator's circumstances must bear a 'reasonably close resemblance, but need not be identical.'"  *Graham*, 230 F.3d at 39, also recognized that whether there is "substantial similarity" is normally a question of fact; the question, then, is whether it is plausible the jury could find substantial similarity. *Doe v. New York University*, *supra*.

*Brown v. Daikin Am. Inc.*, 756 F.3d at 230, citing *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 96 (2d Cir. 1999), ruled "substantial similarity in all material respects" existed where the same source book of discipline was used for relevant parties, as Columbia's GBMP was here. *Graham v. Long Island R.R.*, 230 F.3d at 39, found "substantial similarity in all material respects" where an employer treated members of one protected class better than others, as John alleges Columbia did for the Jane Does and against him, a male.

The Amended Complaint (ECF 41) at paragraphs 206-207 alleges:

206.    On February 26, 2018, John Doe formally filed a complaint with Columbia against Jane Doe 1 and Jane Doe 2 for harassment and retaliation arising out of the Bwog article (John Doe did not yet know about Jane Doe 3's complaint).

Four days later, on March 2, 2018, Columbia John Doe informed John Doe by e-mailed letter that "effective immediately," he was subject to an interim suspension based on the "seriousness" of "multiple alleged violations," which at that time were the allegations of Jane Doe 1, Jane Doe 2 and Jane Doe 3.

207.   The interim suspension was selectively imposed on John Doe in part because John Doe was the male. The interim suspension imposed upon the male John Doe based solely on the allegations of the female Jane Doe 1, female Jane Doe 2 and female Jane Doe 3 in their complaints and in disregard to the allegations of male John Doe in his counter-complaints.   No female at Columbia who has been made the subject of a sexual misconduct proceeding was subject to an interim suspension based solely on allegations.  The foregoing reflected Columbia's gender biased victim-centered procedures (¶¶ [61-74] above) and Columbia's gender biased campus culture (¶¶ [77-107] above).

Consideration as to whether putative comparators' offenses were of "comparable seriousness," to quote this Court, "requires -- in addition to an examination of the acts -- an examination of the context and surrounding circumstances in which those acts are evaluated. *Graham*, 230 F.3d at 40." (ECF 34: p. 49.)  As alleged in the Amended Complaint (ECF 41: ¶ 208), John was subject to an interim suspension due to the allegations of the separate complaints of female Jane Doe 1, female Jane Doe 2 and female Jane Doe 3, and female Jane Does 1-3 each were not subject to an interim suspension based upon the allegations in John's separate complaints against the female Jane Doe 1, female Jane Doe 2 and female Jane Doe 3.  The female cases were filed individually by female Jane Does 1-3 against the male John, and on an individual basis the male John and female Jane Doe 1, female Jane Doe 2 and female Jane Doe 3 were each direct comparators as they were in the same situation: a person accused of sexual misconduct.  As discussed below in Point III (pp. 15-19), the leaking was sexual harassment.  Although John faced more allegations than any one Jane Doe did, this did not alter the fact that female Jane Doe 1, female Jane Doe 2 and female Jane Doe 3, were each, on an individual basis, a comparator to the male John.  It is rather an example of how, per the Second Circuit in *Brown v. Daikin Am. Inc.*, 756 F.3d 219, and *Graham v. Long Island R.R.,* 230 F.3d 34, comparators may not be identical.

As now alleged in the Amended Complaint (ECF 41: ¶ 209), this Court has acknowledged the comparator situation between Jane Doe 1 and John in upholding the Fifth Cause of Action (ECF 34: pp. 53-55), and Title VII case law supports the same inference of being comparators for Jane Does 1-3 as to selective enforcement concerning the interim suspension: *McDonald v. Santa Fe Trail Transp. Co*., 427 U.S. 273, 283 n.11 (1976) ("precise equivalence in culpability between employees is not the ultimate question" -- as alleged here, no determination had been made at time of imposition of interim suspension); *Humphries v. CBOCS West, Inc*., 474 F.3d 387, 405 (7th Cir. 2007) (italics in original) ("a more sensitive reading of our cases indicates that we have often stated that the similarly situated requirement *normally* entails a showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct *without such differentiating or mitigating circumstances as would distinguish their conduct* or the employer's treatment of them"); *McAlester v. United Air Lines, Inc*., 851 F.2d 1249, 1261 (10th Cir. 1988) (stating that "in a disparate treatment case the fact that other employees did not commit the exact same offense…as long as their acts were of comparable seriousness," as alleged here).

Especially after the amendments, a jury could plausibly determine that these comparators are similarly situated. *Rodriguez v. Town of Ramapo*, 412 F. Supp.3d 412, 436 (S.D.N.Y. 2019); *Weslowski v. Zugibe*, 14 F. Supp.3d 295, 319 (S.D.N.Y. 2014).

## III.  THE AMENDED COMPLAINT STATES A MERITORIOUS CAUSE OF ACTION FOR *DAVIS* HARASSMENT AS TO THE INTERIM SUSPENSION (THE 3rd CAUSE OF ACTION).

The Court dismissed the harassment claim as to the interim suspension (the 3rd Cause of Action) for not alleging Title IX harassment (ECF 34, pp. 2, 50-51). Respectfully, John maintains that he was sexually assaulted by Jane 1 within the meaning of 34 CFR 106.30(a)(3) (ECF 41: ¶¶ 116-117, 119, 124), and sexually harassed by Jane Does 1-3 within the meaning of 34 CFR 106.30(a)(2): "[u]nwelcome conduct determined by a reasonable person to be so severe, pervasive,

and objectively offensive that it effectively denies a person equal access to the recipient's education

program or activity."  Columbia's deliberate indifference to and active participation in the sexual

harassment in violation of Title IX per *Davis v. Monroe County Bd. of Education*, 526 U.S. 629

(1999), occurred in wake of his claims. The Amended Complaint pleads:

> John Doe was subjected to a campaign of sexual harassment because of his
> male gender.  After Jane Doe 1 filed her complaint, Columbia administrators
> solicited complaints from Jane Doe 2, Jane Doe 3 and Jane Doe 4 and imposed an
> interim suspension on John Doe and treated him as a serial rapist that the facts did
> not warrant.  Columbia investigated Jane Doe 2's case even though Jane Doe 2
> requested that there not be such an investigation, and Columbia allowed John Doe
> to be subjected to ridicule and significantly lowered standing with his fellow
> students from the publication of the bwog article.  Columbia had the obligation to
> prevent and remedy sexual harassment, *Davis v. Monroe Bd. of Education*, 526 U.S.
> 629 (1999), but Columbia, with its anti-male worldview, facilitated and participated
> in the sexual harassment. . . .

(ECF 41: ¶ 216.)   The Amended Complaint also alleges that "John Doe was deprived of

educational opportunities and use of campus facilities by the interim suspension removing John

Doe from the Columbia campus and community, and John Doe was deprived of his diploma as the

end result of the Columbia-sponsored sexual harassment" (ECF 14: ¶ 212, ECF 41: ¶ 221) and that

"John Doe was deprived of non-academic educational opportunities" (ECF 14: ¶ 213, ECF 41: ¶

222).  The Amended Complaint (ECF 41: ¶¶ 127, 217-224) then greatly expands the allegations

for the "*Davis* harassment" claim to make clearer how there was such proscribed Title IX

harassment. Columbia's denial of the "*Davis* harassment" claim in the Amended Complaint as

lacking factual specificity (ECF 47: Df. Mem. 15-22) is false rhetoric.  Motion to dismiss law

requires assuming the pleaded facts to be true and giving reasonable inferences to the pleader, *Doe

v. Columbia*, 831 F.3d at 48-49, *Doe v. New York University*, 2021 WL 1226384*8, not arguing

pedantically with the pleader over eight pages of allegations.

In *Doe v. East Haven Bd. of Educ.*, 200 F. App'x 46, 48 (2d Cir. 2006) (Newman, J,

Cabranes J., Sack, J.), where the complaining student reported a rape and was then subjected to

verbal abuse of being called "[a] slut, a liar, a bitch, a whore," the Second Circuit ruled that publicly calling a person with a sexual slur in that case was a jury issue to determine whether it was Title IX harassment. Here, John was called a "rapist" and was "doxxed" via *bwog* (ECF 41: ¶¶ 127, 218, 221); the circumstances alleged created a hostile environment as to which Columbia did not take measures to protect John from but rather acted to further the harassment.  Usage of a slur is a classic ingredient in the creation of a hostile work environment, such that it can per se constitute a hostile work environment. *Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572, 575-577 (D.C. Cir. 2013); *Riccio v. New Haven Bd. of Educ.*, 467 F.Supp.2d 219, 222-223 (D. Conn. 2006). Specific facts alleged in paragraph 223 of the Amended Complaint show *Doe v. East Haven Bd. of Educ.* is on point. Columbia misconstrues *Doe v. East Haven Bd. of Educ.* to say that it does not concern "rapist" as a slur: this Court cites that case for the proposition that sexual slurs are sexual harassment (ECF 34: p. 51), and the Amended Complaint explains why "rapist" here is a slur (ECF 41: ¶¶ 222-223). Columbia ignores that the slur denotes sexual conduct of the worst kind.  The slur is gendered language because, it has been ruled, action taken on account of one's (actual or alleged) sexual conduct is inherently on account of one's sex. *Bostock v. Clayton County, Georgia*, 140 S.Ct. 1731, 1737-1744 (U.S. 2020). Therefore, John being slurred a rapist and doxxed is "severe, pervasive, objectively offensive" sexual harassment. Even if "rapist" were a gender-neutral slur, it is a sexual slur when applied to a gendered person since sexual conduct invokes one's sex. *Id.*

Columbia nevertheless relies upon *Nungesser v. Columbia*, 169 F.Supp.3d 353 (S.D.N.Y. 2016), where it is said that a female's carrying her mattress was not directed to Nungesser's status as a male. Columbia's argument that this case did not involve sexual harassment because the verbal abuse in this case was gender neutral fails as "it's irrelevant what a [defendant] might call its discriminatory practice, how others might label it, or what else [besides sex] might motivate it." *Bostock*, 140 S.Ct. at 1744. Columbia suspended mistreated John because he was an accused *male*,

which is unjust animus. *Id*. at 1742.; it also fails since a defense of gender-neutrality against gender bias cannot survive this Court's recognition of articulable doubt, public pressure, and a plausible inference of sex bias (ECF 34: pp. 43-48). *See Denver II*, 1 F.4th at 834-836 (gender bias implausible when sex bias plausible); *Menaker*, 935 F.3d at 33; *Doe v. Columbia*, 831 F.3d at 56.

Moreover, *Nungesser*'s facts differ from John's (*see* i-ii, iv-ix, next). As alleged in the Amended Complaint (ECF 41: ¶ 219), due to Columbia's action and inaction, John experienced a hostile environment for education due to, among other things: (i) deprivation of "participation in…the benefits of" school, 20 U.S.C. § 1681(a), by banning him from classrooms without any process; (ii) through social media (ECF 41: ¶¶ 77-107), Columbia imbued the campus atmosphere with gender bias by their propagation of "rape culture," "believe all women," "believe survivors," and the #metoo movement, *Crawford v. Nat'l R.R. Passenger Corp.*, 2015 WL 8023680 *7 (D. Conn. Dec. 4, 2015) (this language, like epithets, "need not be directed at a plaintiff in order to contribute to a hostile work environment"); (iii) John was publicly called a "rapist" and had personally identifiable information, including his full name, leaked on *bwog*; (iv) Columbia imposed an unduly harsh and unnecessary non-contact order on John, which effectively forced him to drop a course; (v) Columbia failed to investigate and prosecute John's claims of harassment and retaliation; (vi) Columbia arbitrarily dismissed and failed to investigate John's claim of sexual exploitation; (vii) Columbia arbitrarily and unnecessarily suspended John; (viii) the "interim suspension" taken within days of his filing a complaint constituted retaliation against his filing a harassment complaint against Jane Does 1-3; and (ix) John was socially ostracized, generally, and in particular, was compelled to resign from clubs and his fraternity owing to the *bwog* story.  John certainly did suffer "a concrete, negative, and systemic effect on his ability to receive an education." *See Riccio v. New Haven Bd. of Educ.*, 467 F. Supp.2d at 227-228 (earning good grades does not disprove deprivation of education in presence of slurs and neglect).

Columbia asserts that the identification of John in *Bwog* as a rapist with his name and list of clubs is not pleading with specificity is incorrect and misses the point.  As alleged in the Amended Complaint (ECF 41: ¶ 215), the character assassination via leaking resembles *Schwake v Arizona Bd. of Regents*, 967 F.3d 940, 949-950 (9th Cir. 2020), where it was found that release of "confidential and privileged" information about a Title IX case prejudiced the university's decision-making since the version of events released painted the male respondent in a bad light and supported an inference of gender bias.  Given the portrayal of John in *Bwog* as a sexual deviant, *Schwake* cannot be distinguished.  Columbia's focus on the permissibility of such leaking under Columbia's GBMP is mistaken for Title IX purposes.  Columbia can say its GBMP is not violated by such leaking, but that does not change the adverse effect on fair Title IX decision-making.  Further, Columbia's decision to not investigate nor take action to protect John's privacy is to renege on prior assurances of confidentiality if he participated in their internal adjudication. (ECF 41: ¶¶ 125-126.)  "[O]nce a university has promised procedural protections to employees, the disregard or abuse of those procedures may raise an inference of bias." *Menaker*, 935 F.3d at 33.  Subsequent to Columbia's unwillingness to enforce their guarantees of confidentiality for parties under GBMP, John suffered doxing and subjection to a slur (ECF 41: ¶ 127).  Columbia had an interest in this shaming since their staff identified as "like-minded activists" and chose not to be seen as siding with someone in John's position. (ECF 41: ¶¶ 108-109.)

Columbia asserts Columbia's imposition of the interim suspension within days of John's filing counter-complaints was not evidence of retaliation, citing *Papelino v. Albany Coll. of Pharmacy*, 633 F.3d 81 (2d Cir. 2011), but *Papelino* ruled that two days was sufficiently proximate to constitute a causal link between events, and only four days separated John's filing of his harassment counter-complaint and being summarily put on an interim suspension.

**IV. JOHN ALLEGES TRACEABILITY: HE HAS STANDING TO SEEK DAMAGES FOR THE EXPULSION AND DENIAL OF THE DIPLOMA HE EARNED; SUCH RELIEF IS NOT MOOT.**

    **A.  Amendments To Establish Traceability and Dispel Mootness.**

The Court dismissed the expulsion and the loss of the diploma as part of John's damages for not being casually connected to the sexual misconduct proceedings that are the subject matter of the case.  (ECF 34, pp. 27-33.)  The Complaint did attempt to draw that connection when alleging (and the Amended Complaint continues to allege):

> . . . John Doe suffered a serious psychological toll from dealing with the June 2018 Jane Doe 1 investigation report and hearing that had come in the wake of Columbia's March 2018 interim suspension, Columbia's May 2018 rejection of his retaliation and harassment complaint and Columbia's May 2018 denial of granting John Doe the diploma he had earned despite the obstacles that the interim suspension had presented.  John Doe felt under siege, was severely depressed and entertained suicidal thoughts as a result of the four sexual misconduct disciplinary cases in which he insisted he was not guilty.

> . . . Despite recent student suicides, Columbia evinced no concern and failed to offer counseling to a male respondent facing four disciplinary cases suddenly arising his senior year in his last semester at Columbia in 2018, with two of the cases relating to alleged events in 2016.  "In fact, Columbia's case manager—a role designed to "assist parties in navigating the conduct process at Columbia; from the initial intake meeting in response to an allegation through the hearing process and beyond [emphasis added]" (Columbia GBMP, 20) -- assigned to John Doe had not only failed to accommodate John Doe's needs as a student, she had failed to even communicate with Doe after February 5, 2018, which was neglect indicating deliberate indifference to John Doe's education.

> . . . That indifference becomes more stark given Federal guidance in September 2017 that schools had an obligation under Title IX to offer "individualized services offered as appropriate to either or both the reporting and responding parties involved in an alleged incident of sexual misconduct" in "making every effort to avoid depriving any student of her or his education. The measures needed by each student may change over time, and the Title IX Coordinator should communicate with each student throughout the investigation to ensure that any interim measures are necessary and effective based on the students ' evolving needs." Columbia failed to make "every effort" to avoid depriving John Doe of his education, indeed they failed to make hardly any effort, and any effort that was made was untimely and insufficient. Furthermore, rather than take the initiative -- as intended by the language of the September 22, 2017 guidance that assigns agency to the Title IX Coordinator and treats the student as a passive

> recipient of aid -- Columbia's response lacked the "individualized and appropriate"
> customization that John Doe needed at the time given his circumstances. Under this
> guidance, a school is required to provide interim measures and accommodations to
> students in order to allow them to maintain educational opportunities that they
> would otherwise have had.

(ECF 14: ¶¶ 160-162; ECF 41: ¶¶ 161-163.)

The Amended Complaint now makes the causal connection between the expulsion/loss of the diploma and John's damages from the sexual misconduct proceedings by three sets of additional allegations. *First*, Columbia's decision finding John responsible and permanently expelling for the e-mail hacking "disregard[ed] that the e-mail hacking would not have occurred but for the cumulative developments in the sexual misconduct proceedings detailed above and Columbia's deliberate indifference to John Doe's need for services." (ECF 41: ¶ 170.) *Second*, "[t]he finding of responsibility for the e-mail hacking and alleged retaliation was decisive in determinations of credibility regarding Jane Does 3 and 4." (ECF 41: ¶ 171.) *Third*, the additional allegations that support the *Davis* harassment interim suspension claim (ECF 41, ¶¶ 127, 217-224) discussed above (pp. 15-19) establish traceability between the e-mail hacking and reflect the psychological blow dealt to John from the interim suspension and developments in the sexual misconduct proceedings and Columbia's deliberate indifference.  It was in these extraordinary circumstances that the e-mail hacking occurred, which would not have happened but for the circumstances besetting John, who wanted it all to stop. The causal nexus between Columbia's maltreatment and John's misstep is tight: Columbia suspended him, summarily rejected his counter-complaints, withheld counseling and academic support, finding for Jane Doe 1 for the sexual intercourse she said she initiated and texted "LMAO" about, driving John to the brink of suicide as he sees his hopes and dreams destroyed, then expelled him and denied his diploma for reacting when not of sound mind.  There is nothing "hypothetical" in providing relief resulting from Columbia's proscribed Title IX deliberate indifference.

John need only satisfy "the "fairly traceable" prong of the standing inquiry, which requires [him] to plausibly plead that [Columbia's] alleged actions "materially increase[d] the probability of injury." *Huddy v. F.C.C.,* 236 F.3d 720, 722 (D.C.Cir.2001)." *Rothstein v. UBS AG,* 772 F.Supp.2d 511, 515 (S.D.N.Y. 2011), *aff'd*, 708 F.3d 82 (2d Cir. 2013). This Court rightly noted that: "The fact that there is an intervening cause of a plaintiff's injury is not necessarily a basis to find that the injury is not "fairly traceable" to a defendant's conduct, even if that intervening cause would foreclose a finding of proximate cause. *Id.* …[T]he Second Circuit has noted that "particularly at the pleading stage, the 'fairly traceable 'standard is not equivalent to a requirement of tort causation 'and that 'for purposes of satisfying Article III's causation requirement, we are concerned with something *less than the concept of proximate cause*." *Id.* (ECF 34: p. 25.)

**B.  Columbia's Meritless Lack of Standing and Mootness Arguments.**

Columbia nevertheless argues that John's lack of standing and mootness prevents John from seeking damages related to his expulsion (which occurred after John had done the work for receiving his diploma) and not being awarded a diploma (which is an ongoing injury).  (ECF 47: Df. Mem. 6-13.)  Columbia's argument is misconceived.

**1.**     **The Meritless Traceability/Standing Objection.** Columbia's argument that John does not allege that the expulsion/lack of diploma are fairly traceable to Columbias challenged actions (ECF 47: Df. Mem. 8-12) is false posturing that fails to deal specifically with what is alleged in the Amended Complaint.  As discussed above (pp. 15-21), the Amended Complaint pleads specific facts that establish the expulsion/lack of diploma are fairly traceable to Columbia's challenged actions.  John's Opposition Brief to Columbia's original motion to dismiss contained a discussion of significant Article III standing cases to show that knowing what was specifically at issue in each of standing cases helps avoid what Columbia does, which is to manipulate words to reach a result on purported standing grounds.  (ECF 32: pp. 20-21.)

**a.** <u>**Ignoring Linkage of Columbia's Discriminatory Conduct and E-Mail**</u>

<u>**Hacking.**</u>  Columbia argues that all John does is to make conclusory allegations and argumentative

assertions with respect to the linkage of the expulsion/lack of diploma to Columbia's challenged

actions.  (ECF 47: pp. 11-12.)  That simply is not true.  The factual allegations of the Complaint

at paragraphs 127, 161-171, 174, and 214-224 are anything but conclusory and argumentative.

According to the Amended Complaint, the e-mail hacking and expulsion/denial of diploma were

very much part and parcel of the existing Title IX proceedings and were an effect of the deliberate

indifference Title IX discrimination.  It is improper on a motion to dismiss for Columbia to ignore

how the e-mail hacking and expulsion/denial of diploma are treated in the Amended Complaint.

Columbia is attempting to treat the e-mail hacking and expulsion/denial of diploma as wholly

separate, which is not how the Amended Complaint treats them.  Consistent with the case law,

standing must be decided based on what the Amended Complaint alleges, not on Columbia's

misstatement of the Amended Complaint and citation of inapposite cases (ECF 47: pp. 9-10).

**b.** <u>**Blaming John Instead Of Columbia's Deliberate Indifference.**</u>

Columbia resorts to false, perverse polemical attack on John for calling Columbia to account for

egregious conduct that is the subject of the 3rd Cause of Action. (ECF 47: pp. 11-12.)   Columbia

badly misstates John's claim as John engaging in the e-mail hacking because of Columbia ruling

against John, which is false and flies in the face of motion to dismiss law.  Columbia omits

suspending John, summarily rejecting his counter-complaints, withholding counseling and

academic support, finding for Jane Doe 1 for the sexual intercourse she said she initiated and texted

"LMAO" about, driving John to the brink of suicide. This is not a case of self-inflicted injury;

Columbia's effort to treat it as John's free will is Columbia's unjustified editorializing; John's

Article III standing theory does not render traceability meaningless.

23

The cases cited by Columbia are inapposite and do not support its argument.  In *Nat. Res. Def. Council v. U.S. Food & Drug Admin.*, 710 F.3d 71 (2d Cir. 2013), the Second Circuit ruled that the exposure of the plaintiff organization member to the chemical triclosan was not self-inflicted and there was not a breakage of the causal chain based upon the Government's assertion the exposure was avoidable.   In *Bandler v. Town of Woodstock*, 832 F.App'x 733 (2d Cir. 2020), the plaintiff brought suit over a traffic ticket he received when driving over the speed limit.  In *Taylor v. F.D.I.C.*, 132 F.3d 753 (D.C. Cir. 1997), employees who voluntarily left their jobs could not request reinstatement.  In *Union Cosmetic Castle Inc. v. Amorepacific Cosmetics USA Inc.*, 454 F.Supp.2d 621 (E.D.N.Y. 2006), the plaintiff vendors lacked standing for an antitrust action due to the plaintiff vendors' rejection of an exclusive dealing arrangement.

**2.  The Meritless Mootness Objection.**  Columbia's position that John's case for damages for the expulsion/denial of diploma (ECF 47: Df. Mem. 12-13) is moot is misconceived for the same reason as the standing argument is: Columbia is impermissibly ignoring the Amended Complaint's allegations about e-mail hacking resulting from Columbia's discriminatory conduct.

Given the amendments, the one case cited by this Court and by Columbia, *Chapin v. Chapin*, 568 U.S. 165 (2013), needs to be re-examined for its actual relevance to this case.  *Chapin v. Chapin* was cited for the proposition that the federal courts do not decide hypothetical questions, but in fact the holding in the case was that a father's appeal from an order entered by the district court under the International Child Abduction Remedies Act, directing his daughter's return to Scotland as her country of habitual residence, was not rendered "moot" by fact that mother had returned with the daughter to Scotland.  Similarly, in *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), a suit challenging the use of chokeholds by Los Angeles police, the case was not rendered moot even though while it was pending in court, city police authorities prohibited use of a certain type of chokehold in any circumstances and imposed a six-month moratorium on use of another.

24

Columbia is incorrect that John will remain expelled and the Court's decision will have no effect on John's rights.  For his Title IX causes of action, John is seeking money damages and injunctive relief in the form of vacating the disciplinary findings, expunging the disciplinary record and awarding the diploma he already earned.  (ECF 41: pp. 137-139.)  There is nothing moot about the requested relief.  Expulsion is not the subject of the requested relief and is beside the point.

## V.  PRIOR JANE DOES 1 AND 4 ARTICLE 78 PROCEEDINGS AND INJUNCTIVE RELIEF IN THIS CASE.

The law is that a plaintiff is not barred by the res judicata of a prior state law Article 78 proceeding from bringing a subsequent federal law-based suit.  *Karamoko v. New York City Hous. Auth.*, 170 F.Supp.2d 372, 377 (S.D.N.Y. 2001) (Chin, J.) ("Article 78 courts are courts of limited jurisdiction and are unable to award monetary damages" and thus federal law claims not barred by prior Article 78 proceeding); *Davidson v. Capuano*, 792 F.2d 275, 280 (2d Cr. 1986) (federal action not barred by prior Article 78 proceeding).  The issue of what injunctive relief that John can have because of the prior Jane Does 1 and 4 state law Article 78 proceedings is limited to the Jane Doe 1 and Jane Doe 4 claims (4th, 5th and 6th Causes of Action) and does not affect the other four claims (1st, 2d, 3rd and 7th Causes of Action).

## CONCLUSION

For the reasons stated above, Columbia's partial motion to dismiss should be denied, and the Court should grant such other and further relief as deemed just and proper.

Dated:   New York, New York             **NESENOFF & MILTENBERG, LLP**
        November 23, 2021              **By: /s/** *Philip A. Byler*

                                              **Philip A. Byler**
                                              **Andrew T. Miltenberg**
                                              **363 Seventh Avenue, Fifth Floor**
                                              **New York, New York 10001**
                                              **(212) 736-4500**
                                              pbyler@nmllplaw.com
                                              amiltenberg@nmllplaw.com
                                              **Attorneys for Plaintiff John Doe**

25