

| | | | |
|---|---|---|---|
| Ira S. Nesenoff<br>Andrew T. Miltenberg<br>―――――――<br>Stuart Bernstein<br>Tara J. Davis | Barbara H. Trapasso<br>Gabrielle M. Vinci<br>Nicholas E. Lewis<br>Adrienne D. Levy<br>Regina M. Federico<br>Suzanne Dooley<br>Amy Zamir | Philip A. Byler<br>Diana R. Warshow<br>Kara L. Gorycki<br>Susan E. Stark<br>Janine L. Peress<br>*Senior Litigation Counsel*<br><br>Jeffrey S. Berkowitz<br>Rebecca C. Nunberg<br>*Counsel*<br><br>Marybeth Sydor<br>*Title IX Consultant* |

ATTORNEYS AT LAW
**nmllplaw.com**

September 21, 2022

**VIA ECF**
The Honorable Gregory H. Woods
United States District Court
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York, 10007

      Re:    <u>*John Doe v. Columbia University,* **Case No. 1:20-cv-06770-GW**</u>

Dear Judge Woods:

      The undersigned represents Plaintiff John Doe ("John") in the above referenced action. This letter is submitted in compliance with the Court's Order dated September 19, 2022, directing the parties to submit to the Court a copy of the Bwog article referenced in the Amended Complaint (ECF 35) -- specifically, paragraphs 128-130.

      There are actually four documented versions of the article, as recorded over a span of five days as Bwog curated the article and its comments. (See Exhibits A-E to this letter; John's name has been redacted; John will provide the earlier versions of the articles without redaction if they can be filed under seal.) The Bwog article in its four versions released John's personally identifiable information such as his sex and extracurricular involvement beyond Student Governing Board, while the article's commenters revealed his name, initials, and year. The Bwog article in its four versions article also released that John was subject to investigation for multiple rapes, a fact that Columbia had yet to relay to John. Bwog's comment policy[1] makes clear they curate each distinct comment section which in practice is intertwined with an article as they are

---

[1] https://web.archive.org/web/20180213045835/http://bwog.com/comment-policy-lightbox/



automatically displayed together. The iteration in the article's comments over several days demonstrate the tense campus atmosphere around sexual misconduct issues.

The article's first version, which is what prompted John's complaint alleged in paragraph 129 of the Amended Complaint, went up February 6, 2018, and was recorded by John via contemporaneous screen-capture. (See Exhibits A and B to this letter.)  In the first version, John's name appeared three times in comments.  Those comments were up for approximately a day, including someone falsely posting under John's name.

The second version recorded on February 7, 2018 shows a comment from February 6, 9:35PM, includes John's name with asterisks in lieu of most letters. This was up for three days. Again, no other Student Governing Board member had John's initials nor had the other facts revealed about John – *e.g.*, no other Student Governing Board member was involved in a fraternity. (Exhibit C, p.3)

The third version recorded on February 9, 2018, shows the growth of comments, which indicates public interest.  One comment never taken down, from February 6 at 11:22 PM, listed John's year and called him a "rapist," which besides defaming him, made John even more easily identifiable beyond information provided by article. (Exhibit D, p.3.)

The fourth version, recorded on February 13, 2018, shows the last change made to article, which took place in the body of the article rather than the paired comments.  The addition stated that the Student Governing Board refused to comment on the Bwog article, referring only to its policies regarding conflicts of interest. (Exhibit E, p.1.)

As the article concedes, the publication of details from Gender Based Misconduct investigations and John's personally identifiable information violated the plain meaning of Columbia's Policies promised privacy to all parties participating in Gender Based Misconduct processes. The article indicated John's sex ("recuse himself," Exhibits C-E, p.1) and extracurricular activity beyond Student Governing Board, although it falsely asserted John was asked to leave these associations: "Sources have confirmed that the accused individual was asked to leave his fraternity as a result of similar allegations, and has stepped down from other leadership positions on campus." (Exhibits C-E, p.1.) In fact, John only left these associations approximately one month later after Columbia barred him from participating in them when they placed him on interim suspension (ECF 35, paragraph 140).  As a consequence of the Bwog article in its four versions, John's personally identifiable information was released, he was publicly humiliated, and

363 Seventh Avenue | 5th Floor | New York, NY | 10001 | T: 212.736.4500

101 Federal Street | 19th Floor | Boston, MA | 02110 | T: 617.209.2188

4 Palo Alto Square | 3000 El Camino Real | Suite 200 | Palo Alto, CA | 94306 | T: 650.209.7400



he was harmed by way of precluded educational and professional opportunity that were otherwise available to him (ECF 35, *inter alia*, paragraphs 158, 220-222). Moreover, Columbia's failure at the time to redress this violation of school policy and harm done to John is underscored by the fact that there was no reason for the Jane Roes to leak details of "multiple rape allegations" (Exs. C-E, p.1) to Bwog (allegations then-unknown by John, ECF 35, paragraph 130) except to harm John, as the given pretextual reason of club funding is unsound because Student Governing Board Bylaws dictate club funding based on objective data, namely a given club's use and demonstrated need of funds, event attendance and club membership.

                                                    **Respectfully submitted,**

                                                    **NESENOFF & MILTENBERG, LLP**

                                                    **By:** /s/ *Philip A. Byler*
                                                          Philip A. Byler