USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/10/2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
JOHN DOE,                                                          :
                                                                   :
                                    Plaintiff,                     :
                                                                   :    1:20-cv-6770-GHW
                    -against-                                      :
                                                                   :    MEMORANDUM OPINION
COLUMBIA UNIVERSITY,                                               :    AND ORDER
                                                                   :
                                    Defendant.                     :
------------------------------------------------------------------ X

GREGORY H. WOODS, District Judge:

## I. INTRODUCTION AND BACKGROUND[1]

On September 28, 2022, this Court granted Defendant Columbia University's motion to dismiss Plaintiff John Doe's amended complaint as to all of Plaintiff's claims that the Court had previously dismissed in an August 2021 order. *Doe v. Columbia*, No. 20-cv-6770, 2022 WL 4537851 (S.D.N.Y. Sept. 28, 2022) (the "September 2022 order"); *see Doe v. Columbia*, 551 F. Supp. 3d 433 (S.D.N.Y. 2021) (the "August 2021 order"). On October 7, 2022, Plaintiff filed a motion requesting reargument, reconsideration, and amendment of certain rulings in those orders, or, in the alternative, certification of those orders to the court of appeals. Dkt. No. 68 (motion); Dkt. No. 70 (memorandum in support, or "Pl's Mem."). The motion is fully briefed. *See* Dkt. No. 74 (Defendant's opposition, or "Def's Opp."); Dkt. No. 75 (Plaintiff's reply, or "Reply"). Because Plaintiff has not demonstrated that amendment of any of the Court's prior rulings is justified, and because Plaintiff has failed to show that appellate certification is warranted, his motion is DENIED.

---

[1] As this order resolves a motion for reconsideration, the Court presumes the reader's familiarity with this case's facts and procedural history, which are discussed at length in several prior orders. *See Doe v. Columbia*, No. 20-cv-6770, 2022 WL 4537851, at *1–14 (S.D.N.Y. Sept. 28, 2022); *Doe v. Columbia*, 551 F. Supp. 3d 433, 441–55 (S.D.N.Y. 2021).

## II. DISCUSSION

### A. No Amendment of the Court's Prior Orders is Justified

#### 1. Legal Standards

##### i. Federal Rule of Civil Procedure 60(b)

Federal Rule of Civil Procedure 60(b) provides that, in specified circumstances, the Court may "relieve a party or its legal representative from a final judgment, order, or proceeding." "A 'final order' within the meaning of the Rule 'is one that ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Abdell v. City of New York*, 739 F. Supp. 2d 450, 453 (S.D.N.Y. 2010) (quoting *Nelson v. Unum Life Ins. Co. of Am.*, 468 F.3d 117, 119 (2d Cir. 2006) (per curiam)); *see also* 11 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2852 & n.7 (3d ed. 2022) (collecting cases and noting that, after the 1948 amendments to the Federal Rules of Civil Procedure, only final orders are subject to Rule 60(b)).

##### ii. Federal Rule of Civil Procedure 59(e) and Southern District of New York Local Rule 6.3

Under Federal Rule of Civil Procedure 59(e), within 28 days of an entry of judgment, a party may file "[a] motion to alter or amend a judgment." And Southern District of New York Local Rule 6.3 permits parties to, within 14 days of a court's order, file "a notice of motion for reconsideration or reargument" of that motion. "The standards set forth in both Fed. R. Civ. P. 59(e) and Local Rule 6.3 are identical." *In re New York Comm. Bancorp, Inc., Sec. Litig.*, 244 F.R.D. 156, 159 (E.D.N.Y. 2007). To justify reconsideration, the moving party must be able "to point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp. Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *see also Bartlett v. Tribeca Lending Corp.*, No. 18-cv-10279, 2019 WL 1595656, at *1 (S.D.N.Y. Apr. 12, 2019) (noting that a party moving for reconsideration of a previous order must demonstrate that the Court overlooked "controlling law or factual matters" that had been previously put before

it). "A motion to reconsider will not be granted where the moving party is merely trying to relitigate an already decided issue," *Padilla v. Maersk Line, Ltd.*, 636 F. Supp. 2d 256, 258-59 (S.D.N.Y. 2009), because "reconsideration of a previous order by the Court is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *R.F.M.A.S., Inc. v. Mimi So*, 640 F. Supp. 2d 506, 509 (S.D.N.Y. 2009). "The Second Circuit has stated that '[t]he standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied.'" *Mahmud v. Kaufmann*, 496 F. Supp. 2d 266, 270 (S.D.N.Y. 2007) (quoting *Shrader*, 70 F.3d at 257) (alterations in original). Ultimately, "[t]he decision to grant or deny a motion for reconsideration rests within 'the sound discretion of the district court.'" *U.S. Bank Nat'l Ass'n v. Triaxx Asset Mgmt. LLC*, 352 F. Supp. 3d 242, 246 (S.D.N.Y. 2019) (quoting *Aczel v. Labonia*, 584 F.3d 52, 61 (2d Cir. 2009)).

        iii.     **Federal Rule of Civil Procedure 54(b)**

As relevant here, Federal Rule of Civil Procedure 54(b) provides that "[w]hen an action presents more than one claim for relief . . . any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." But "there is a strong presumption against amendment of prior orders" under Rule 54(b). *Bergerson v. N.Y. State Off. of Mental Health*, 652 F.3d 277, 288 (2d Cir. 2011). Prior orders are subject to the "law of the case doctrine," which provides that "where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (internal citation omitted). So "a prior order usually may not be changed unless there is an 'intervening change of controlling law,

the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice.'" *Bergerson*, 652 F.3d at 288–89 (quoting *Virgin Atl.*, 956 F.2d at 1255).

    **2. Analysis**

Plaintiff has not shown, under any applicable rule, that amendment of the Court's prior orders is justified.

As an initial matter, Rule 60 does not apply here. That rule permits the Court to relieve parties from certain final judgments, orders, and proceedings. Fed. R. Civ. P. 60(b). The key word is "final"—the rule only applies to *final* orders. *See Abdell*, 739 F. Supp. 2d at 453; 11 Wright & Miller, *supra*, § 2852 & n.7. And "a 'final order' within the meaning of the Rule 'is one that ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Abdell*, 739 F. Supp. 2d at 453. Here, the Court has issued no such order; instead, it has dismissed some but not all of Plaintiff's claims. *See Doe v. Columbia*, 551 F. Supp. 3d at 477 (partially granting and partially denying Defendant's motion to dismiss). A partial dismissal is a quintessentially nonfinal order. *See, e.g., Gortat v. Capala Bros., Inc.*, No. 07-cv-3629, 2009 WL 10706563, at *2 (E.D.N.Y. May 4, 2009) ("When a district court dismisses some but not all of the claims in a case, the order of dismissal is not a final decision."). So Rule 60 is inapplicable to the challenged orders in this case.

Nor should any of Plaintiff's dismissed claims be reinstated when considered under the rules that do apply to Plaintiff's motion.[2] While Federal Rule of Civil Procedure 59(e), Southern District Local Rule 6.3, and Federal Rule of Civil Procedure 54(b) represent independent bases upon which a party may seek reconsideration of a court's prior order, they each turn on the same fundamental standard: To justify reconsideration, a party must be able to show a change in the controlling law or

---

[2] Plaintiff points to Federal Rule of Civil Procedure 54(b) and Southern District Local Rule 6.3, but not Federal Rule of Civil Procedure 59(e), as grounds for his motion. Pl's Mem. at 3–4. Defendant notes, and the Court agrees, that Rule 59(e), rather than Rule 60(b), applies here. *See* Def's Opp. at 4. For completeness, the Court will consider Plaintiff's motion under Rule 59(e) in addition to the rules relied on by Plaintiff.

that the court overlooked important legal or factual matters that, if properly recognized, would change the conclusion reached by the court. *See Shrader*, 70 F.3d at 257 (noting that a party moving for reconsideration must "point to controlling decisions or data that the court overlooked"); *In re New York Comm. Bancorp*, 244 F.R.D. at 159 (noting that the standards for reconsideration under Federal Rule 59(e) and Local Rule 6.3 are identical); *Bergerson*, 652 F.3d at 288–89 (noting that, under Rule 54(b), "a prior order usually may not be changed unless there is an 'intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice'" (quoting *Virgin Atl.*, 956 F.2d at 1255)).

Plaintiff has not met this standard. Plaintiff's motion seeking reinstatement of the second, third, and fourth causes of action in the amended complaint, as well as restoration of injunctive relief stemming from Plaintiff's expulsion and subsequent loss of his diploma, is premised on the existence of facts or legal arguments that the Court allegedly "overlooked and/or mistakenly failed to perceive." *See* Pl's Mem. at 4, 14, 17, 21.[3] But a review of Plaintiff's briefing and the Court's prior orders shows that the Court did consider the facts and arguments that Plaintiff now raises in his reconsideration motion with respect to the second and third causes of action, as well as the injunctive relief stemming from Plaintiff's expulsion and subsequent loss of his diploma. And while Plaintiff does identify a theoretical issue with the Court's previous decisions concerning his fourth cause of action, in this case, that conceptual argument does not practically alter the determination that Plaintiff has not plausibly stated that claim.

The Court's decision to dismiss Plaintiff's second cause of action—selective enforcement in imposing Plaintiff's interim suspension—does not warrant reconsideration. *See Doe*, 2022 WL 4537851, at *27–28. Plaintiff contends that under the governing standard of *Brown v. Daikin*

---

[3] Plaintiff does not argue that there have been any intervening changes in the controlling law necessitating reconsideration of the Court's orders. *See generally* Pl's Mem.

*American Inc.*, 756 F.3d 219 (2d Cir. 2014), the Jane Does were substantially similar to John Doe because they all faced a sexual misconduct complaint. Pl's Mem. at 14–17. He therefore asks the Court to reconsider its ruling that the selective enforcement claim could not proceed because the Jane Does were not similarly situated students to John Doe. *Id.* But "[t]his is an identical argument, in all material respects, to the argument in Plaintiff's original briefing"—and the argument in his opposition to Defendant's motion to partially dismiss the amended complaint—that the "Jane Does are similarly situated to Plaintiff because they were the subject of Plaintiff's counter-complaint." *Doe*, 2022 WL 4537851, at *28 (quoting *Doe*, 551 F. Supp. 3d at 470). As this Court has already explained twice, however,

> [t]he relevant metric for comparing Plaintiff to Jane Does 1–3 is not whether they filed complaints against each other, but instead the overall severity of the allegations each individual faced. And the severity of the allegations against Jane Does 1–3 did not "bear a reasonably close resemblance" to those faced by Plaintiff when Plaintiff was given an interim suspension. *Brown*, 756 F.3d at 230 (internal quotation omitted). At that time, Jane Does 1–3 each faced one harassment complaint; Plaintiff faced three. Columbia was entitled to take that material difference into account as it imposed discipline.

*Id.* Because "[a] motion to reconsider will not be granted where the moving party is merely trying to relitigate an already decided issue," *Padilla*, 636 F. Supp. 2d at 258-59, the Court will not reconsider the dismissal of Plaintiff's second cause of action.

The Court will also not reconsider the dismissal of Plaintiff's third cause of action— the *Davis* harassment claim. *See Doe*, 2022 WL 4537851, at *29–30. In seeking reinstatement of this claim, Plaintiff primarily recounts the portion of his amended complaint concerning Columbia's response to a student blog post (and appended comments) about Columbia's investigation of John Doe.[4] Pl's Mem. at 17–21. But the Court, after careful consideration,

---

[4] Plaintiff also includes a paragraph, taken from his amended complaint, summarily listing facts that supposedly represent "Columbia committ[ing] deliberate indifference." Pl's Mem. at 21. But those conclusory statements—as Columbia noted in its motion to dismiss the amended complaint—allege "actions that Columbia took in response to

6

previously rejected Plaintiff's theory that Columbia's response to that student post could give rise to a *Davis* harassment claim. *Doe*, 2022 WL 4537851, at *29–30. Plaintiff's arguments on this topic, like his arguments about the second cause of action, simply "relitigate an already decided issue" rather than pointing the Court to any new facts or legal theories warranting reconsideration. *Padilla*, 636 F. Supp. 2d at 258-59. So Plaintiff's *Davis* harassment claim remains dismissed.

Nor will the Court reinstate Plaintiff's ability to pursue injunctive relief stemming from his expulsion. *See Doe*, 2022 WL 4537851, at *25–27. Plaintiff argues that "[a] causal connection was pled between the expulsion and the loss of the diploma and John Doe's damages from the sexual misconduct proceedings." Pl's Mem. at 23. The Court agrees: In the September 2022 order, the Court found that Plaintiff had sufficiently alleged causation between Columbia's actions and Plaintiff's injuries to demonstrate standing. *Doe*, 2022 WL 4537851, at *18–19. But Plaintiff's argument regarding that causal connection is unresponsive to the Court's reason for precluding Plaintiff from pursuing injunctive relief—res judicata. *Id.* at *25–27. As Plaintiff does not even address the Court's res judicata reasoning in its motion for reconsideration, the Court will not reconsider its conclusion on this issue.[5]

That leaves Plaintiff's attempt to reinstate his fourth cause of action: the erroneous outcome claim as to Jane Doe 1. In its original motion to dismiss, Defendant identified specific issues that,

---

*Plaintiff's* alleged misconduct, not any alleged peer harassment *against* Plaintiff," and thus cannot support a *Davis* claim. Dkt. No. 47 at 22.

[5] While Plaintiff, in passing, raises an argument on the res judicata issue in his reply brief, Reply at 9–10, courts generally do "not consider issues raised in a reply brief for the first time because if a party raises a new argument in a reply brief the opposing party may not have an adequate opportunity to respond to it." *In re Various Grand Jury Subpoenas*, 235 F. Supp. 3d 472, 487 (S.D.N.Y. 2017) (quoting *Sacchi v. Verizon Online LLC*, No. 14-cv-423, 2015 WL 1729796, at *1 n.1 (S.D.N.Y. Apr. 14, 2015)). Given that principle, and the fact that Plaintiff's res judicata argument does not grapple with the Court's reasoning in its last order, the Court has no cause to reconsider the issue of injunctive relief related to Plaintiff's suspension and lack of diploma.

because they had been litigated in the state-court proceeding involving Jane Doe 1, could not be relitigated in this court consistent with collateral estoppel principles:

> Specifically, Plaintiff is collaterally estopped from re-litigating that Columbia failed to consider the expert report he procured to support his own claim of incapacitation, ¶ 157; unreasonably declined to investigate his claim of Sexual Exploitation, ¶ 224; improperly concluded that Jane Doe 1 withdrew consent, ¶ 159; and applied a different standard in determining his credibility as opposed to Jane Doe 1, ¶ 158. *See Doe v. Columbia Univ.*, 2020 WL 999006, at *6-7 (rejecting these arguments).

Dkt. No. 28 at 31–32. In its August 2021 order, the Court found that because Plaintiff had failed to respond to Defendant's argument that he was collaterally estopped from relitigating those issues, he had conceded his erroneous-outcome claim as the Jane Doe 1 proceedings. *Doe*, 551 F. Supp. 3d at 473–74. The Court also found that this claim could not be repleaded because repleading claims barred by collateral estoppel is futile. *Id.* at 477. And on that basis, the Court refused to consider Plaintiff's attempt to replead the claim in his amended complaint. *Doe*, 2022 WL 4537851 at *15.

Plaintiff notes, however, that this Court is tasked with examining whether Columbia complied with Title IX, while the state court instead considered whether Columbia complied with its own gender-based misconduct ("GBM") policy. Pl's Mem. at 6. And because different evidence may be relevant for each question, it is possible that allegations in Plaintiff's complaint *other* than the ones that he was collaterally estopped from making could result in a finding that the Jane Doe 1 outcome was erroneous under Title IX. *See id.* at 6, 9–10. So, Plaintiff argues, the Court should not have concluded that Plaintiff's failure to address the argument that he was collaterally estopped from relitigating certain issues *within* his fourth cause of action necessarily meant that, as a matter of law, that cause of action was abandoned in its entirety. *See id.* Plaintiff did not raise this argument in his

opposition to Defendant's original motion to dismiss, but the Court will consider it here in the interest of completeness.[6]

While Plaintiff correctly notes that a state court's determination that a university complied with its own procedures does not conceptually estop a federal-court Title IX erroneous-outcome claim, here, even a properly tailored application of collateral estoppel prevents Plaintiff from plausibly stating his fourth cause of action and requires that claim's dismissal. A party can state a *prima facie* case for a Title IX sex discrimination claim, including an erroneous-outcome claim, by pleading facts that show—among other things—that the university "follow[ed] a clearly irregular investigative or adjudicative process" in imposing discipline. *Menaker v. Hofstra Univ.*, 935 F.3d 20, 33 (2d Cir. 2019); *see also* Pl's Mem. at 6 (arguing that *Menaker* governs Plaintiff's fourth cause of action).[7] And *Menaker* can be read to outline two principal ways by which a plaintiff can plausibly establish that a university's investigative or adjudicative process was clearly irregular. First, a plaintiff can point directly to those irregularities. *See Menaker*, 935 F.3d at 34–35 (finding clear irregularities where a university failed to interview relevant witnesses or provide the plaintiff with a copy of an investigative report, "completely disregarded" its own written disciplinary procedures, and chose to pursue discipline even when an administrator knew that an accusation against the plaintiff was false). Second, "it is plausible to infer" that an "evaluator has been influenced by bias"—and thus to that there were procedural irregularities—where "the evidence substantially favors one party's version of

---

[6] Plaintiff did raise this argument in his opposition to Defendant's second motion to dismiss, *see* Dkt. No. 52 at 5–12, but the Court could not consider that argument consistent with its prior order barring Plaintiff from repleading claims precluded by collateral estoppel. *See Doe*, 2022 WL 4537851, at *14–15.

[7] To state a *Menaker* claim, a plaintiff must also show that these clearly irregular processes occurred "amid criticism for reacting inadequately to allegations of sexual misconduct by members of one sex." *Menaker*, 935 F.3d at 33. Plaintiff's briefing points to three sets of facts that the amended complaint pleaded related to that criticism: "(a) the 2011 [Dear Colleague Letter]; (b) Columbia's gender-based misconduct policy as 'victim-centered'; [and] (c) Columbia's social media statements about such subjects as rape culture and the MeToo# Movement." Pl's Mem. at 10; *see id.* at 10–13. The Court assumes without deciding that Plaintiff has met this part of the *Menaker* standard, but—because Plaintiff has not sufficiently pleaded that Columbia's investigative or adjudicative processes were clearly irregular—Plaintiff has still failed to state a *Menaker* claim.

a disputed matter, but an evaluator forms a conclusion in favor of the other side (without an apparent reason based in the evidence)." *Id.* at 34 (quoting *Doe v. Columbia*, 831 F.3d 46, 57 (2d Cir. 2016)). Either way, the Second Circuit took care to "emphasize that [the] standard requires *clear* irregularities to raise an inference of bias." *Id.* at 34 n.50 (emphasis in original).

Here, to plead the existence of clear irregularities in Columbia's handling of Jane Doe 1's case, Plaintiff points to (1) Defendant's crediting of Jane Doe 1's evidence over Plaintiff's in finding that Plaintiff was responsible for nonconsensual sexual intercourse, and (2) Defendant's alleged crediting of an account by Jane Doe 1 and her friends that Plaintiff discussed his ancestors being Nazis, which Plaintiff claims was "obviously another concoction." Pl's Mem. at 14 (citing Dkt. No. 41 ¶¶ 159(a), (c)). Those facts, rather than directly alleging procedural irregularities, attempt to call into question Columbia's evaluation of the evidence in the Jane Doe 1 proceeding.[8] But given the limitations imposed by the prior state-court decision, neither those facts nor any others pleaded in Plaintiff's amended complaint can plausibly allege that anyone at Columbia "form[ed] a conclusion" completely at odds with the available evidence. *See Menaker*, 935 F.3d at 34.

That is so because, while Plaintiff is right to note that the collateral estoppel doctrine does not categorically ban his claim as to Jane Doe 1, it does bar him from relitigating issues that were adjudicated in the Article 78 proceeding—including the facts that he asserts as the factual predicate for his *Menaker* claim here. While Plaintiff identifies Columbia's crediting of Jane Doe 1's evidence on the issue of consent and the story about Plaintiff discussing his ancestors as "allegations [that] were not adjudicated in the Article 78 proceeding in terms of their support for a case a gender bias,"

---

[8] This makes sense, as it is hard to imagine any procedural irregularities that Plaintiff could have alleged that would not be estopped by the state-court decision. The details of Columbia's investigative and adjudicative processes were litigated in state court, and that court described them in detail. *See Doe*, 2020 WL 999006, at *1–3. Any challenges to procedures that the state court approved of would have had to somehow not call into question that court's findings. But given that Plaintiff does not point to any direct procedural irregularities in his motion to reconsider, the Court understands him to be raising a *Menaker* claim based on improper weighing of the evidence, rather than one based on identified issues with Columbia's procedures.

10

Pl's Mem. at 14, that is inaccurate: Plaintiff's allegation that Jane Doe 1 allegedly initiated sexual activity, his claim that her text messages were ambiguous, his argument that Columbia should have found him to have been incapacitated, and his questioning of the story about his ancestors were all argued by the parties and considered by the state court in that case. See *Doe*, 2020 WL 999006, at *6 (noting the considerable evidence that Jane Doe 1 withdrew consent even if she did initiate sexual activity, discussing Jane Doe 1's text messages, approving of Columbia's determination that Plaintiff was not incapacitated, and noting that Columbia had considered Plaintiff's testimony about what he said about his ancestors). The state court also considered and ruled on the additional issues that Defendant noted in its original motion-to-dismiss briefing, and that Plaintiff is accordingly estopped from relitigating here. *See* Dkt. No. 28 at 31–32 (noting that the state court determined that Columbia considered the expert report that Plaintiff procured to support his own claim of incapacitation, investigated Plaintiff's claim of Sexual Exploitation, and did not apply a different standard in determining his credibility as opposed to Jane Doe 1); *Doe*, 2020 WL 999006, at *6–7. In sum, Plaintiff does not point to any issues raised in this case concerning Columbia's adjudication of the evidence in the Jane Doe 1 proceeding that were not raised in the state-court proceeding.

And after considering all of Plaintiff's allegations, the state court not only concluded that Columbia substantially complied with its own procedures, but also made the more specific findings that there was sufficient evidence to support Columbia's determination "that [Jane Doe 1] withdrew her consent"—or that there was, "at the very least," "ambiguity as to consent"—and that there was evidence supporting Columbia's conclusion that "[Plaintiff] did not stop in response to [Jane Doe 1]'s actions and words." *Doe*, 2020 WL 999006, at *6; *see id.* at *5 (rejecting the argument that Columbia had not shown, by a preponderance of the evidence, that John Doe committed the accused-of conduct against Jane Doe 1). Those findings, based on the same evidence presented by Plaintiff here, necessarily bar this Court from holding that "the evidence substantially favor[ed] one

11

party's version of a disputed matter, but an evaluator form[ed] a conclusion in favor of the other side." *Menaker*, 935 F.3d at 34 (quoting *Doe*, 831 F.3d at 57); *see also Hansen v. Miller*, No. 20-3591, 2022 WL 15527742, at *3 (2d Cir. Oct. 28, 2022) (noting that collateral estoppel in New York applies to issues that are "necessarily decided in the prior action against a party"). Plaintiff has thus failed to plead a plausible Title IX claim with respect to the outcome of the Jane Doe 1 proceedings, and his fourth cause of action remains dismissed.

### B. Certification to the Second Circuit Is Not Warranted

Plaintiff has not shown that certification of either order to the Second Circuit is warranted. Under 28 U.S.C. § 1292(b), district courts may certify certain nonfinal orders to the court of appeals. But such certification is warranted only if (1) "[the] order involves a controlling question of law" (2) "as to which there is substantial ground for difference of opinion," and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Section 1292(b) certification is thus "a rare exception to the final judgment rule" that "is reserved for those cases where an intermediate appeal may avoid protracted litigation." *Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 865–66 (2d Cir. 1996); *see also In re Facebook, Inc., IPO Secs. & Derivative Litig.*, 986 F. Supp. 2d 524, 533 (S.D.N.Y. 2014) ("Interlocutory review [under § 1292(b)] is strictly reserved for exceptional cases and is especially rare in the early stages of litigation."). And even if all three elements of § 1292(b) are satisfied, the district court "retains unfettered discretion to deny certification." *Youngers v. Virtus Inv. Partners Inc.*, 228 F. Supp. 3d 295, 298 (S.D.N.Y. 2017) (internal quotation marks and citation omitted).

Plaintiff makes essentially no substantive argument that § 1292(b)'s requirements are satisfied as to either the August 2021 order or the September 2022 order, let alone that the Court should exercise its discretion to certify either order for appeal. Instead, he recites the § 1292(b) standard before conclusively asserting that "[t]he issues presented here: (1) are *questions of law*, (2) are

*controlling* of what claims get[ ] submitted to a jury, (3) are *contestable*, and (4) will *speed up* the litigation." Pl's Mem. at 24–25 (emphases in original); *see also* Reply at 10 (not making any other substantive arguments relative to § 1292(b)). That failure to present argument is enough, by itself, to reject interlocutory appeal given Plaintiff's "burden of establishing all three elements" under § 1292(b). *Youngers*, 228 F. Supp. at 298 (citation omitted); *see Barboza v. Vill. of Liberty*, No. 13-cv-4067, 2016 WL 8653502, at *4 (S.D.N.Y. Jan. 21, 2016) (denying a motion for certification under § 1292(b) where the moving party "claim[ed] in conclusory fashion" that statutory requirements were met).

In any event, none of § 1292(b)'s requirements are met here. A "'question of law' certified for interlocutory appeal 'must refer to a pure question of law that the reviewing court could decide quickly and cleanly without having to study the record.'" *Century Pac., Inc. v. Hilton Hotels Corp.*, 574 F. Supp. 2d 369, 371 (S.D.N.Y. 2008) (quoting *In re Worldcom, Inc.*, No. M–47 HB, 2003 WL 21498904, at *10 (S.D.N.Y. June 30, 2003)); *see also Morris v. Flaig*, 511 F. Supp. 2d 282, 315 (E.D.N.Y. 2007) (holding that "mixed questions of law and fact" are inappropriate for § 1292(b) certification). But the issues on which Plaintiff seeks interlocutory appeal would require lengthy examination of the record; indeed, Plaintiff's principal argument for reconsideration is that this Court allegedly "overlooked and/or mistakenly failed to perceive" certain facts in the amended complaint. *See* Pl's Mem. at 4, 14, 17, 21. As Plaintiff seeks certification of mixed questions of law and fact, rather than pure legal questions, the challenged orders are inappropriate for certification.

Additionally, there is not a "substantial ground for difference of opinion" on any issues that Plaintiff asks the Court to reconsider. 28 U.S.C. § 1292(b). Substantial ground for difference of opinion exists where there is "genuine doubt as to the correct applicable legal standard relied on in the order" because "(1) there is conflicting authority on the issue or (2) the issue is particularly difficult and of first impression." *Secs. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, No. 17-cv-

13

4952, 2017 WL 4838575, at *3 (S.D.N.Y. Oct. 24, 2017) (Woods, J.) (internal citations omitted). With the exception of the fourth cause of action, Plaintiff does not point to disagreement with the Court's statement of the applicable legal standards as justifying reconsideration; rather, the motion for reconsideration relies on factual allegations that the Court allegedly overlooked.  *See* Pl's Mem. at 14–24.  And while the Court agrees that its original application of collateral estoppel to Plaintiff's fourth cause of action was insufficiently nuanced, it has now explained in more detail why on these facts, the collateral estoppel doctrine leads to the dismissal of that claim—because Plaintiff is estopped from relitigating the facts that form the basis for his claim, he thus has failed to state a plausible claim under Federal Rule of Civil Procedure 12(b)(6) and *Menaker*.  Given that neither the standard under Rule 12(b)(6) nor under *Menaker* is controversial, and given that Plaintiff strenuously argued that *Menaker* should apply to his Jane Doe 1 erroneous-outcome claim, there is no conflicting legal authority or particularly difficult legal issue justifying certification under § 1292(b).

Finally, interlocutory appeal would not "materially advance" this case.  28 U.S.C. § 1292(b). "An immediate appeal is considered to advance the ultimate termination of the litigation if that appeal promises to advance the time for trial or to shorten the time required for trial."  *Dill v. JPMorgan Chase Bank, N.A.*, No. 19-cv-10947, 2021 WL 3406192, at *8 (S.D.N.Y. Aug. 4, 2021) (quoting *Transp. Workers Union of Am., Local 100 v. N.Y.C. Transit Auth.*, 358 F. Supp. 2d 347, 350 (S.D.N.Y. 2005)).  That is often the case where an appellate ruling on the certified issues could terminate the case or where resolution of those issues will plainly resolve others in the case.  *See Capri Sun GmbH v. Am. Beverage Corp.*, No. 19-cv-1422, 2022 WL 3137131, at *4 (S.D.N.Y. Aug. 5, 2022) (citing *Juarez v. Nw. Mut. Life Ins. Co., Inc.*, No. 14-cv-5107, 2014 WL 12772237, at *2 (S.D.N.Y. Dec. 30, 2014), and *Fed. Hous. Fin. Agency v. UBS Ams., Inc.*, 858 F. Supp. 2d 306, 338 (S.D.N.Y. 2012)).

Here, however, Plaintiff merely states that "[k]ey meritorious parts of this case should not be broken off now, only to be reinstated later on appeal and the case needing to be re-tried." Pl's Mem. at 25. But Plaintiff does not explain how certifying any issues could possibly resolve this case, or how a decision on one of the certified issues could resolve others.[9] It may be—though Plaintiff does not say as much—that Plaintiff believes that resolving the issues he seeks to certify now will advance the prospect of settlement between the parties. But "[t]his circumstance—under which no more can be said than that interlocutory resolution of the [challenged orders] would generally tend to promote settlement—falls short of those in which an interlocutory appeal has been certified as apt to 'materially advance' the litigation." *Capri Sun GmbH*, 2022 WL 3137131, at *4. Accordingly, certifying either order for appeal now would not materially advance the litigation.

### III. CONCLUSION

For the reasons stated above, Plaintiff's motion for reargument, reconsideration, and amendment of the Court's August 2021 and September 2022 orders, or, in the alternative, for certification of those orders to the court of appeals is DENIED.

The Clerk of Court is directed to terminate the motion pending at Dkt. No. 68.

SO ORDERED.

Dated: November 10, 2022
New York, New York

GREGORY H. WOODS
United States District Judge

---

[9] Plaintiff's argument also assumes that his appeal would be meritorious. But if that is not the case, "an interlocutory appeal . . . would delay the outcome of this litigation, and force the parties, and the Circuit, to expend resources they otherwise would not have." *Capri Sun GmbH*, 2022 WL 3137131, at *4 (emphasis omitted).