**KAPLAN HECKER & FINK LLP**

350 FIFTH AVENUE | 63RD FLOOR
NEW YORK, NEW YORK 10118

1050 K STREET NW | SUITE 1040
WASHINGTON, DC 20001

TEL (212) 763-0883 | FAX (212) 564-0883

WWW.KAPLANHECKER.COM

DIRECT DIAL    212.763.0883
DIRECT EMAIL  gtenzer@kaplanhecker.com

April 21, 2023

**VIA ECF**

The Honorable James L. Cott
United States District Court
Southern District of New York
500 Pearl Street, Room 1360
New York, New York 10007

Re:    *Doe v. Columbia University*, No. 1:20-cv-06770-GHW-JLC

Dear Judge Cott:

Pursuant to the Court's Order, ECF 91, Defendant Columbia writes to address three issues raised in Plaintiff's letter dated April 18, 2023, ECF 89, that Columbia had not previously addressed in its own letter submitted to Judge Woods on April 7, 2023, ECF 84. Those issues include whether Columbia should be required to produce the following categories of documents in response to Plaintiff's Requests for Production ("RFPs"): (1) documents concerning and in response to the #MeToo movement; (2) documents concerning Columbia's Sexual Violence Response ("SVR"); and (3) "social media postings identified in paragraphs 87-107 of the Amended Complaint." Columbia's responses and objections to Plaintiff's RFPs are attached as Exhibit A.

The aim of Plaintiff's requests appears to be finding something, somewhere that he can point to as support of gender bias on the part of someone at Columbia, a large university that employs many people and has many students. But a search this broad is neither relevant nor "proportional to the needs of this case," as Rule 26 requires. *See, e.g.*, *Kaye v. N.Y. City Health & Hosps. Corp.*, No. 18 Civ. 12137, 2020 WL 7237901, at *4 (S.D.N.Y. Dec. 9, 2020) (Cott, M.J.). In particular, even if Plaintiff could show gender bias on the part of someone, somewhere at Columbia, that is not sufficient for Plaintiff to prove his claims. Rather, Plaintiff is required to show that alleged gender bias was a "motivating factor" in his gender-based misconduct ("GBM") proceedings. *See Doe v. Colgate Univ.*, 760 F. App'x 22, 30 (2d Cir. 2019); *see also Doe v. Univ. of Denver*, 952 F.3d 1182, 1193 (10th Cir. 2020) (holding plaintiff must show that the "decision in *his particular case* was based on his gender" (emphasis added)). The documents, if they exist, that would reflect any such "motivating factor" are precisely the documents that Columbia has already agreed to produce (subject to a protective order and in compliance with the Family Educational Rights and Privacy Act), including, among other things: (1) the file for each of Plaintiff's relevant GBM proceedings, including the investigative reports and exhibits, as well as the investigators' underlying interview notes (RFP Nos. 4-6, 48-62, 64, 70-78); (2) recordings of Plaintiff's GBM hearings and documents reflecting or recording the deliberations of the hearing

KAPLAN HECKER & FINK LLP

2

and appellate panelists in his GBM proceedings (RFP Nos. 1-2, 3 & 47); (3) non-privileged communications of the investigators in Plaintiff's GBM proceedings concerning those proceedings with each other, with the Jane Does and their representatives, with the other witnesses, and with the hearing panelists (RFP Nos. 13-16); (4) documents concerning GBM trainings, including for the GBM Office and the hearing and appellate panelists (RFP Nos. 22, 29-30); and (5) a spreadsheet detailing how other GBM proceedings were resolved by Columbia, broken down by the gender of the complainant and the respondent (RFP Nos. 17-20).

But that is not enough for Plaintiff, who also seeks the following:

***RFPs concerning #MeToo.*** Plaintiff has served the following requests concerning Columbia's response to the #MeToo movement:

> RFP No. 33: Documents concerning the actions and publications of Columbia taken in response to the #MeToo movement referenced in paragraphs 100 – 104 of the Amended Complaint.

> RFP No. 34: All documents containing communications by and from persons in Columbia's Title VII Office[1] and in Columbia's executive offices concerning "#MeToo."

Documents concerning the "#MeToo" movement are not probative of gender bias in Plaintiff's GBM proceedings and fall outside the proper scope of discovery in this action. *See, e.g.*, *Kaye*, 2020 WL 7237901, at *4; *see also, e.g.*, *Doe v. New York Univ.*, 438 F. Supp. 3d 172, 186 (S.D.N.Y. 2020) (recognizing on motion to dismiss that allegations related to the #MeToo movement on NYU's campus did not support claims of gender bias). Even if the Court were to conclude otherwise, which it should not, there would need to be a specific connection between Plaintiff's GBM proceedings and the #MeToo movement for the requested documents to have any relevance to this litigation. As discussed above, however, Columbia has already agreed to produce documents, if any exist, that would reflect whether there was any relevant discussion of the #MeToo movement in connection with his particular GBM proceedings. Nothing more should be required. Moreover, the references in paragraphs 100-104 of the Amended Complaint cited in RFP No. 33 are not actually references to "the actions and publications of Columbia," but rather to Facebook posts made by SVR which, as discussed below, have no relevance to this litigation.

***RFPs concerning SVR.*** Plaintiff has served the following requests concerning SVR:

> RFP No. 35: All documents concerning the unit at Columbia called Sexual Violence Response (known as "SVR") referenced in paragraph 77 of the Amended Complaint.

> RFP No. 36: All documents concerning SVR providing resources for preventing and responding to gender-based misconduct referenced in paragraph 77 of the Amended Complaint.

> RFP No. 37: All documents concerning SVR's efforts in outreach to the Columbia

---

[1] Although Plaintiff claims that this RFP references "Columbia's Title IX Office," ECF 89 at 3, it actually references "Columbia's Title VII Office." We assume this was simply a mistake.

**KAPLAN HECKER & FINK LLP**  3

community referenced in paragraph 78 of the Amended Complaint.

SVR is a division of Columbia Health that supports survivors of sexual violence, as compared to Columbia's GBM Office, which investigates and adjudicates GBM Policy violations, such as Plaintiff's GBM proceedings at issue in this case. *See* Columbia Health, *Sexual Violence Response*, health.columbia.edu/content/sexual-violence-response. SVR is listed as a resource on the website and in the materials of the GBM Office, just like other resources are similarly listed, such as Columbia University Public Safety, Counseling Services, the New York City Policy Department, and Mount Sinai St. Luke's Hospital. *See* https://genderbasedmisconduct.columbia.edu/; *see also* Columbia Univ. GBM Office, *GBM Resources for Students*, https://genderbasedmisconduct.columbia.edu/sites/default/files/content/Documents/GBMResourcesGuideforStudents.pdf (GBM Office listing SVR as separate confidential resource).

As Columbia explained in its motion to dismiss briefing, SVR has nothing whatsoever to do with this case. *See* ECF 28 at 13-14; ECF 33 at 8-10. At no point has Plaintiff identified any connection between SVR and his GBM proceedings, nor could he. *See generally* ECF 41 (Am. Compl.); *see also, e.g.*, ECF 52 at 11-12 (Pl.'s Opp. to Def.'s Mot. to Dismiss Am. Compl.). Rather, to support his argument, Plaintiff has repeatedly invoked *Doe v. Purdue University*, 928 F.3d 652 (7th Cir. 2019). *See, e.g.*, ECF 41, ¶ 79; ECF 70 at 13 (Pl.'s Mot. for Reconsideration). But the social media post at issue in *Purdue* was relevant because the director of the organization who authored the post was personally involved in the sexual misconduct proceedings at issue in that case. *Purdue Univ.*, 928 F.3d at 669-70. Plaintiff has made no such allegations here, so the *Purdue* citation is inapposite.

***RFP seeking social media postings cited in the Amended Complaint.*** In RFP No. 38, Plaintiff requests that Columbia produce "[t]he social media postings identified in paragraphs 87-107 of the Amended Complaint." As a threshold matter, Columbia is unable to identify, let alone produce, certain posts cited in paragraphs 87-107 of the Amended Complaint, such as the "Victim Blaming, 4/31/13, tweet" or "End Rape on Campus, 10/14/15, tweet," as it is unclear to us what account or user Plaintiff is citing and where any such posts could be found. *See* ECF 41, ¶ 87 nn.20-21. While the vast majority of the eighty-six referenced posts in the Amended Complaint appear to be from SVR's Facebook page, *see, e.g., id.* ¶ 92 nn.28-30, as explained above, SVR has nothing to do with Plaintiff's GBM proceedings or this litigation, and so these posts have no relevance here. But even if the posts were relevant, Plaintiff has described and even directly quoted the posts in his own pleading and therefore must have access to them. Accordingly, there is no reason that Columbia should be required to expend time and resources locating the Facebook posts that Plaintiff cites and producing them back to Plaintiff. *See, e.g., S.E.C. v. Strauss*, No. 09 Civ. 4150, 2009 WL 3459204, at *11 (S.D.N.Y. Oct. 28, 2009) (acknowledging "protection from having to produce documents that are equally available to the other party").

Respectfully submitted,

Gabrielle E. Tenzer