

| | Ira S. Nesenoff<br>Andrew T. Miltenberg | Barbara H. Trapasso<br>Gabrielle M. Vinci<br>Kara L. Gorycki<br>Nicholas E. Lewis<br>Adrienne D. Levy<br>Regina M. Federico<br>Suzanne Dooley<br>Amy Zamir | Philip A. Byler<br>Diana R. Warshow<br>Susan E. Stark<br>Janine L. Peress<br>*Senior Litigation Counsel* |
|---|---|---|---|
| | Stuart Bernstein<br>Tara J. Davis | | Jeffrey S. Berkowitz<br>Rebecca C. Nunberg<br>*Counsel* |
| ATTORNEYS AT LAW<br>**nmllplaw.com** | | | Marybeth Sydor<br>*Title IX Consultant* |

May 17, 2023

**By ECF**
Hon. James L. Cott, United States Magistrate Judge
United States District Court - Southern District of New York
500 Pearl Street, Room 1360
United States Courthouse
New York, New York 10007

Re:   *John Doe v. Columbia*, No. 1:20-cv-06770-GHW-JLC

Dear Judge Cott:

The undersigned represents Plaintiff John Doe ("Plaintiff") in this case. The Court's Order dated April 25, 2023 (ECF 94), notes that "the parties should present any disputes to the Court by letter no later than May 17." This letter addresses an outstanding issue related to discovery as it concerns ESI custodians and terms -- specifically, as it concerns the inclusion of terms of biased language like "survivor," "trauma(tic)," and "#metoo" and custodians from Columbia's Sexual Violence Response (SVR) office. We request that Columbia be compelled to do ESI in accordance with the custodians and terms selected by Plaintiff.

Plaintiff's initial requests had 43 and then 36 custodians from Columbia who were direct participants in either disciplinary or administrative roles that interacted with Plaintiff. Columbia then put forth its own list of custodians which excluded relevant administrators like Suzanne Goldberg, and Cristen Kromm, Title IX investigators Deborah Katz and Zachary Friedman and staff. In an effort to compromise, Plaintiff offered to limit to 17 custodians from his list for initial ESI production. But Columbia has proceeded with its own list of custodians, which should be viewed as suspect. A defendant is in a position to craft a custodian list and a search terms list that do not produce relevant documents for the elements of a Title IX case.



Columbia's exclusion of relevant ESI terms greatly hampers discovery into Columbia's bias. Columbia claims they "included a number of plaintiff's search terms," which is true as 3 is a number. Columbia's exclusion of relevant terms like "#metoo," "survivor," "trauma(tic)," prevents discovery into internal discussions about terms that were used in a biased manner publicly through SVR who played a crucial role in the Complaint through "collective community action" on social media. It is unreasonable to exclude terms of biased language used in advertising their Title IX effort that were cited by Complaint from Columbia's public communications. The usage of these terms in public is sufficient and compelling reason to include these terms. Furthermore, Columbia cannot pass off their list as sensible when it excludes necessary terms but includes terms plaintiff never requested. Plaintiff is not interested in Columbia's communications about Jane does or their communications as much as Columbia's communications about himself. They may be a supplement to his terms, but not a substitute. Plaintiff wants to see Columbia's was bias against him as a male, which requires knowing if Columbia has been based against male generally but also him in particular; therefore, plaintiff's requested terms are useful to locating helpful communications between custodians who contain these terms. Finally, Plaintiff's suggested compromise temporarily excluded Columbia employees in SVR but included it as a term since this Court made clear that SVR is undeniably kosher to extent it interfaces with GBM and the like (4/25 Conference, p.70), which is necessarily the case here since the custodians are not working for SVR but GBM, which means any instance of SVR as a term demonstrates interface between these offices.

Columbia's claim that SVR is unrelated to their GBM office is untenable as Columbia has publicly acknowledged SVR as part and parcel of their gender-based misconduct response. Defendant's annual publication *Student Gender-Based Misconduct Prevention & Response 2019-2020*, pp. 2-7, lists SVR along with the Title IX office as part of Defendant's gender-based misconduct response with a section discussing SVR. (ECF 32-1, Byler Decl. Ex. A, pp. 2-7; ECF 41, ¶ 77.) SVR's activities include sexual violence response training. (ECF 32-1, Byler Decl. Ex. A, p. 5 & Ex. B, p. 3; ECF 41, ¶ 77.) In 2018-2019, SVR reached 16,511 students, faculty, and staff at Columbia, plus it had and has content linked to Defendant's website: see, e.g., "Sexual Assault Awareness Month." (ECF 32-1, Ex. B, p. 3; ECF 41, ¶ 77.) SVR's outreach is not limited to in-person events: Columbia's social media activity, especially via SVR, is an official tool of "community action;" Columbia uses SVR's facebook page, in particular, to advertise events, services, share content and monitor this distribution (Dkt. No. 32-1 Ex. B, ("Ex. B") p. 1, 5). This online "community action" includes the very terms Plaintiff now requests—survivor, trauma, and



#metoo. Plaintiff's complaints cites and demonstrates the bias of these terms (ECF 41, Amended Complaint ¶¶ 81-82, 89-93, 100-107). These terms therefore bear relevance not just on Columbia's Title IX enforcement, but on plaintiff whose case was a confluence of these terms and the thinking they encapsulate (Id., ¶195). In short, "survivor" is slang to mean that a female accuser whose accusations are held presumptively true, contrary incoherence or (lack of) evidence notwithstanding (Id., ¶¶ 88-95, 105), "trauma" is shorn of medical or any real meaning and relegated to a crutch for credibility where accusations otherwise would lack it (Id., ¶194), and the #Metoo movement tapped into these tropes and more to fuel false accusations, which Columbia encouraged (Id., ¶¶ 100-107).

The relevance of "#metoo" is also attested to in the link between Columbia's Sexual Violence Response (SVR) and Gender-Based Misconduct (GBM) offices. Consider a 2/23/18 Facebook post by SVR about an event, "Beyond #MeToo," hosted by Columbia's office of university life (an office then-run by Suzanne Goldberg who crafted the GBM rulebook). The post advertises a "timely discussion about gender and sexual harassment." Columbia also used their main Twitter account to advertise the event. Goldberg and a SVR staff member spoke at the event. Introducing the event, Goldberg called #Metoo a "pressing issue" for the university and asked that the audience refer to "all of our social media" (i.e., not just her office's but Columbia's collectively) for more information. During the event, at 10', SVR's Staten states "typically, survivors are not believed" and goes on to relate at 10',42" that Columbia students who make accusation of sexual assault deserve praise. Staten then specifies (at 11',05"-11',24") that "scores of women are being believed, which is great," but that there are men who are a "backlash" against women making accusations in wake of #metoo. It's telling when a large, prestigious institution not only plans an event about a fad, but dedicates effort to advertising it. Columbia recorded it and posted it on YouTube, and advertised it beforehand through their Facebook pages for their office of University Life and office of Sexual Violence Response. It is noteworthy, then, given the effort expended on this event, that the event classified men amidst the "me too moment" as either abusers, individuals who *might be* abusers who need to be introspective about past sexual encounters, or misogynist jerks who make fun of women who make allegations of abuse (11:05-11:24). Though Staten does note later (23:15) that 'not all men are rapists, 'this taxonomy *still* excludes men who have been abused, men who are falsely accused, and those subject to biased processes. This classification of men follows the biased logic that "we need to put survivors at the forefront of this movement." (1:02:57), meaning against men. VP Goldberg dubbed this event something "everybody needs to hear" (1:06:15-1:06:20).  Goldberg changed her tune after activists interrupted her class with protests against alleged failings for students making accusations months prior.

363 Seventh Avenue | 5th Floor | New York, NY | 10001 | T: 212.736.4500

101 Federal Street | 19th Floor | Boston, MA | 02110 | T: 617.209.2188

4 Palo Alto Square | 3000 El Camino Real | Suite 200 | Palo Alto, CA | 94306 | T: 650.209.7400



Goldberg acknowledged that the #metoo movement had made it easier for accusers to file complaints (ECF 41, ¶ 89) yet Columbia discounted this as rationale for a Jane to lie despite Jane Doe 3 viewing it as "the perfect political time to report" (Id., ¶182). Jane Doe 4 expressed similar sentiments. The nexus between Columbia, #metoo, and Title IX is further [illustrated](#) by the fact that signage like "they won't believe us [accusers] anyway" and "tag Columbia" were hung on a visible, central location during the height of #metoo as Plaintiff's TIX processes were ongoing and Columbia committed itself to maintaining 2011/2014 procedures despite the option to bolster procedural protections for neutrality. One of their events, as recorded by a [11/7/18 Facebook post](#), had Dean Kromm as a participant who wrote that she would have "solidarity" with "survivors" which is "critical for social change." The fact that the officer who used such biased language publicly at an SVR event is significant as she handled Plaintiff's sanctioning during this time.

Columbia obstructs proper discovery of Columbia that seeks highly relevant documents that will show how drenched in anti-male sex bias Columbia is, how their internal communication and deliberation reflects what they advertised via their Facebook posts, and how this sex bias was baked into their framework and decision-making in disciplinary proceedings for alleged misconduct. Columbia not only catered to cultural pressure from #metoo when it came to Plaintiff's cases (eg, ECF 41, ¶¶105, 195) but they even hosted an event about it to burnish their PR credentials just as they found Plaintiff guilty for the same reason. Thus, Plaintiff's request for inclusion of "#metoo" in ESI production is not out of an academic interest in Columbia's response to the phenomenon generally, but as it relates to him and how Columbia saw and treated him in light of it. As his complaint asserts, Plaintiff sees it as necessary to include SVR as a custodian since it shaped campus culture through trainings and events that involved other requested custodians.

This goes to one of the basic elements of a Title IX claim: sex bias. *Yusef v. Vassar Corp.*, 35 F.3d 709, 715 (2d Cir. 1994) ("particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding").

        Very truly yours,
        NESENOFF & MILTENBERG LLP
        By: ____*Philip A. Byler, Esq.*____
        **Philip A. Byler, Esq.**

363 Seventh Avenue | 5th Floor | New York, NY | 10001 | T: 212.736.4500

101 Federal Street | 19th Floor | Boston, MA | 02110 | T: 617.209.2188

4 Palo Alto Square | 3000 El Camino Real | Suite 200 | Palo Alto, CA | 94306 | T: 650.209.7400