# KAPLAN HECKER & FINK LLP

350 FIFTH AVENUE | 63RD FLOOR
NEW YORK, NEW YORK 10118

1050 K STREET NW | SUITE 1040
WASHINGTON, DC 20001

TEL (212) 763-0883 | FAX (212) 564-0883

WWW.KAPLANHECKER.COM

DIRECT DIAL    212.763.0883
DIRECT EMAIL   gtenzer@kaplanhecker.com

May 19, 2023

**VIA ECF**

The Honorable James L. Cott
United States District Court
Southern District of New York
500 Pearl Street, Room 1360
New York, New York 10007

                     Re:     *Doe v. Columbia University*, No. 1:20-cv-06770-GHW-JLC

Dear Judge Cott:

Pursuant to the Court's order dated April 25, 2023 (ECF 94), we write on behalf of Defendant The Trustees of Columbia University in the City of New York ("Columbia") to respond to Plaintiff's May 17, 2023 Letter to the Court ("May 17 Letter," ECF 96). The issues Plaintiff raises in his May 17 Letter were all addressed at the April 25 conference. Plaintiff should not be permitted to continue wasting the Court's and Columbia's time and resources in this manner.

## I.    The Issues Plaintiff Raises Were Already Addressed by the Court at the April 25 Conference

Plaintiff claims that his letter "addresses an outstanding issue related to discovery as it concerns ESI custodians and terms – specifically, as it concerns the inclusion of terms of biased language like 'survivor,' 'trauma(tic),' and '#metoo' and custodians from Columbia's Sexual Violence Response (SVR) office." ECF 96 at 1. But this is not an outstanding issue. It was already addressed by the Court at the April 25 conference. During that conference, the Court proposed, and Plaintiff's counsel agreed, that Columbia would apply its proposed search terms and custodians, produce responsive documents, and then Plaintiff would review the produced documents and alert Columbia—and if need be, the Court—if he believed that the production was inadequate:

> MR. BYLER: Well, okay. ESI, I have no problem with the thought of going with what they've proposed so far, so long as that's without prejudice, saying, hey, wait a minute, this is not producing certain -
>
> THE COURT: I think – I'm certainly not going to say, you're stuck with 17 and nothing more, because I don't have enough in front of me to know whether that's appropriate or not. But what I would say is, why don't you get what they're willing to give you. And then if you think there's something inadequate about that, you'll

KAPLAN HECKER & FINK LLP                                                    2

talk to them. And if you can't agree, then you'll tell me.

MR. BYLER: Okay.

THE COURT: Okay?

MR. BYLER: That's fine.

. . . .

THE COURT: You all now, it sounds like we have an agreement, that those 17 custodians on whatever search terms you propose, Mr. Byler is now amenable to your running that.

April 25 Hr'g Tr. at 61:14-62:4, 80:8-11.

In accordance with the Court's direction at the April 25 conference, Columbia immediately began its review of the approximately 28,000 documents resulting from its proposed search. Columbia expects to be in a position to make an initial production of those documents in the next week or so.

Accordingly, none of the issues raised in Plaintiff's May 17 Letter warrant the Court's review. Rather, they are complete repeats of what was already discussed during the April 25 conference, as evidenced by the transcript of that conference, which Columbia already brought to Plaintiff's attention in emails dated April 27 and May 11, 2023.

## II.     Columbia's Proposed Custodians and Search Terms Are Reasonable

Columbia is in the process of reviewing the emails of the 17 custodians most likely to have responsive documents—specifically, the six investigators and nine hearing panelists from the three gender-based misconduct ("GBM") proceedings at issue in this litigation, as well as the Associate Vice President & Title IX Coordinator and the Associate Vice President of Student Conduct and Community Standards, both of whom communicated with Plaintiff during his GBM proceedings, including with respect to his interim suspension. By contrast, Plaintiff's proposed list of custodians—although it overlaps significantly with Columbia's—also includes, for example, the investigators from Plaintiff's fourth GBM proceeding in which Plaintiff was found not responsible, and which is therefore not at issue in this litigation.

With respect to search terms, Columbia is applying terms intended to identify documents that are potentially responsive to Plaintiff's requests for production. Specifically, Columbia is reviewing custodians' ESI containing (1) Plaintiff's first or last name; (2) the first or last name of the three GBM proceeding complainants and one or more of several limiters aimed at connecting the documents to the underlying proceedings, such as "Title IX" or "GBM" or "sex*";[1] (3) the first or last name of any witness in the three underlying GBM proceedings and one or more of the

---

[1] Three of these limiters directly overlap with Plaintiff's proposal (Title IX, TIX, T9) and many others are similar to Plaintiff's proposal and get at the same underlying meaning (*e.g.*, "false accusation," "hearing," "appeal," "investigat*," and "expel").

KAPLAN HECKER & FINK LLP                                                          3

same limiters; (4) the unique Columbia identifier ("UNI") for Plaintiff and each of the three complainants in the underlying GBM proceedings, which makes up part of each of their respective Columbia email addresses; and (5) the unique file number for each of the three underlying GBM proceedings.

The majority of Plaintiff's search terms, on the other hand, have no link whatsoever to Plaintiff or the underlying GBM proceedings and would therefore hit on an inordinate number of irrelevant and non-responsive documents. *See* Fed. R. Civ. P. 26(b)(1); *see also, e.g.*, *Raine Grp. LLC v. Reign Cap., LLC*, No. 21 Civ. 1898, 2022 WL 538336, at *3 (S.D.N.Y. Feb. 22, 2022) (Parker, M.J.) (explaining that search terms "must be carefully crafted" to "minimize the burden of locating relevant and responsive ESI"); *In re Bank of N.Y. Mellon Corp. Forex Transactions Litig.*, No. 11 Civ. 9175, 2014 WL 2884726, at *3 (S.D.N.Y. June 26, 2014) (Cott, M.J.) (requiring limiter on search term that could otherwise result in emails having nothing to do with the litigation). For example, Plaintiff proposes search terms such as "('investigation' OR 'interview') AND ('trauma' OR 'traumatic')" and "('Men' OR 'male' OR 'female' OR 'women') AND ('straight' OR 'heterosexual' OR 'cis' OR 'cishet' OR 'privilege' OR 'disparate impact' OR '#metoo' OR 'rapist' OR 'perp' OR 'abuser')."

Plaintiff's speculation that Columbia is somehow attempting to avoid producing relevant documents by selecting its own custodians and search terms, *see* ECF 96 at 1, is inappropriate and entirely unfounded. Columbia is reviewing every custodial document containing Plaintiff's name, without limit, and then some. Moreover, as this Court has previously explained:

> Defendants are "best situated" to decide how to search for and produce the ESI responsive to Plaintiffs' discovery requests. As the court in *Livingston* aptly observed, plaintiff's "insistence that the [defendant] must collaborate with them to establish a review protocol and validation process has no foothold in the federal rules governing discovery."

> When documents are produced in discovery, whether they be produced electronically or otherwise, the Court does not believe that, in the first instance, the receiving party has a right to examine and evaluate the way the production was made or require collaboration in the review protocol and validation process. It is only if a party can articulate a good faith basis to do so by identifying some deficiency in the production, that an inquiry into the producing party's methodology would be appropriate. Moreover, such an inquiry must be proportional to the facts and circumstances of the case.

*Franck v. N.Y. Health Care Inc.*, No. 21 Civ. 4955, 2022 WL 471333, at *2 (S.D.N.Y. Feb. 16, 2022) (Cott, M.J.) (alteration in original) (internal citations omitted).

### III.     SVR Is Still "Really Not the Same as" the GBM Office

Attempting to expand ESI discovery beyond the agreement reached at the April 25 conference, *see supra* at 1-2, Plaintiff once again raises the issue of SVR. As this Court acknowledged at the April 25 conference when denying Plaintiff's request for discovery on this topic, SVR and the GBM Office are "separate entities" and "really not the same." Apr. 25 Hr'g

KAPLAN HECKER & FINK LLP

Tr. at 67:24-25, 68:1-2.

Nothing in Plaintiff's May 17 Letter should change the Court's prior determination. Plaintiff simply regurgitates his prior arguments, including his claims that Columbia's annual publication, *Student Gender-Based Misconduct Prevention and Response 2019-2020*, lists SVR as part of Columbia's gender-based misconduct response; that SVR provides sexual violence response training; and that SVR does outreach to the Columbia community, including by speaking at University events. *Compare* ECF 96 at 2 *with* ECF 89 at 3-4. The Court has already rejected these points, concluding that SVR and the GBM Office "are very distinct," Apr. 25 Hr'g Tr. at 70:13, and instructing Plaintiff to "take some depositions," with leave to again seek discovery on SVR if Plaintiff can "create some nexus that [the Court doesn't] see existing," *id*. at 72:24-73:1.[2]

### IV.   Plaintiff's #MeToo Demand Is Still "Ridiculously Overbroad"

Similarly, the Court has already considered and rejected Plaintiff's request for document discovery on "#MeToo." At the April 25 conference, the Court explained that Plaintiff's request for documents and communications "concerning MeToo" was "ridiculously overbroad" because it would include, for example, communications "about some TV show last night in which MeToo was featured." Apr. 25 Hr'g Tr. at 63:11-16. The Court informed Plaintiff he was "not getting anything close to that," *id.* at 41:18, and instructed Plaintiff to "take some depositions" to see "if there are really precise, specific documents that may be germane" to Plaintiff's claims, *id.* at 64:18, 65:14-15.

Plaintiff's May 17 Letter offers no new evidence to suggest that the #MeToo movement—which took place on college campuses nationwide—influenced the outcome of his GBM proceedings. Evidence of the movement's presence on campus and activism by students does not correlate to bias in Plaintiff's GBM proceedings. *Cf.* ECF 96 at 3; *see also, e.g.*, *Doe v. N.Y. Univ.*, 438 F. Supp. 3d 172, 186 (S.D.N.Y. 2020) (dismissing male respondent's Title IX claim and holding general allegations concerning #MeToo were insufficient to establish gender bias). Nor does general participation in #MeToo-related events by Columbia administrators and employees. *Cf.* ECF 96 at 3; *see also, e.g.*, *Doe v. St. Joseph's Univ.*, No. 18 Civ. 2044, 2019 WL 13246870, at *11 (E.D. Pa. Apr. 23, 2019) (concluding university investigator's participation in CLE event entitled "MeToo for Legal Practitioners" had "nothing to do with anti-male bias or Doe's disciplinary proceedings"), *aff'd*, 832 F. App'x 770 (3d Cir. 2020).

*   *   *

Plaintiff and his counsel are needlessly multiplying these proceedings by relitigating issues that have already been addressed by this Court. Unfortunately, this is not the first time Columbia has had to relitigate issues because of Plaintiff's apparent discontent with the Court's decisions in

---

[2] Plaintiff's attempt to suggest that an SVR Facebook post somehow establishes a link between SVR and Plaintiff's GBM proceedings is equally unavailing. Plaintiff describes Dean Kromm, who issued the sanctions in Plaintiff's GBM Proceedings, as participating in an SVR event and "wr[iting] that she would have 'solidarity' with 'survivors' which is 'critical for social change.'" ECF 96 at 4. Based on the actual Facebook post, however, it is not at all clear that Dean Kromm is attending an "event." She is simply holding a white board that reads, "I wear purple because solidarity is critical for systemic change." The color purple is apparently associated with domestic violence awareness. *See, e.g.*, https://www.nyc.gov/site/ocdv/press-resources/nyc-go-purple-day.page.

KAPLAN HECKER & FINK LLP                                                          5

this matter. *See, e.g.*, ECF 70, 74-75. Plaintiff's latest filing is simply more of the same. Columbia should not be required to continue bearing the expense of Plaintiff and his counsel's wasteful conduct and disregard for Court orders. *See* Fed. R. Civ. P. 37. Accordingly, Columbia respectfully requests that Plaintiff and his counsel be put on notice that if such conduct continues, they may be subject to sanctions, including reimbursing Columbia for attorneys' fees.


Respectfully submitted,

Gabrielle E. Tenzer