

Ira S. Nesenoff
Andrew T. Miltenberg

Stuart Bernstein
Tara J. Davis

Barbara H. Trapasso
Gabrielle M. Vinci
Kara L. Gorycki
Nicholas E. Lewis
Adrienne D. Levy
Regina M. Federico
Suzanne Dooley
Amy Zamir

Philip A. Byler
Diana R. Warshow
Susan E. Stark
Janine L. Peress
*Senior Litigation Counsel*

Jeffrey S. Berkowitz
Rebecca C. Nunberg
*Counsel*

Marybeth Sydor
*Title IX Consultant*

ATTORNEYS AT LAW
**nmllplaw.com**

**May 23, 2023**

**By ECF**
Hon. James L. Cott, United States Magistrate Judge
United States District Court - Southern District of New York
500 Pearl Street, Room 1360
United States Courthouse
New York, New York 10007

      Re:    <u>*John Doe v. Columbia*</u>, No. 1:20-cv-06770-GHW-JLC

Dear Judge Cott:

    The undersigned represents Plaintiff John Doe ("Plaintiff") in this case. Plaintiff requests leave that this Court accept this response to Ms. Tenzer's letter dated May 19, 2023 (ECF 101) because Ms. Tenzers letter repeatedly, inexcusably and materially gets things wrong in a way that will affect discovery in this case.

    1.    Ms. Tenzer misstates the Plaintiff's agreement to the initial 17 custodians selected by Columbia. Plaintiff did so on the condition that other custodians and terms of Plaintiff's choosing would be applied and the Court agreed if it was determined that ESI production was unsatisfactory. (4/25 Conf., p.61.) Plaintiff knows that ESI production without the custodians and terms he requests is inadequate, as irrelevancy is a type of inadequacy. Columbia's terms may supplement, but they are no substitute for the terms and custodians Plaintiff requests.

    2.    Ms. Tenzer is incorrect to assert that Plaintiff was found not responsible in the Jane Doe 4 proceeding and therefore it is not at issue. It was the Jane Doe 2 proceeding in which Plaintiff was found not responsible, and that correct finding was the only case that had an external contractor as an investigator.



3.      Ms. Tenzer's apparent objection to SVR as custodian is misconceived. Plaintiff only requested it as a term from GBM and TIX custodians, pursuant to the Court's point that the interface between these offices is of interest (4/25 Conf., p. 70). Columbia's hemming and hawing about terms is best rebutted by paraphrasing from correspondence when Columbia admonished that our terms 'would bring up a lot but not much of it would be about Plaintiff,' to which we respond that Plaintiff's interest is in both his sex as a protected class and himself as subjects for ESI production. Plaintiff included slang to capture how Plaintiff and those like him may be talked about without reference to their names or case numbers. Columbia's social media activity, especially via SVR, includes the very terms Plaintiff now requests—survivor, trauma, and #metoo. An SVR event with TIX Coordinator Fisher used these terms and "rape culture."[1] Plaintiff's complaints cites and demonstrates the bias of these terms (ECF 41, ¶¶ 81-82, 89-93, 100-107). These terms therefore bear relevance not just on Columbia's Title IX enforcement, but on plaintiff whose case was a confluence of these terms and the thinking they encapsulate (Id., ¶195). In short, "survivor" is slang to mean that a female accuser whose accusations are held presumptively true, contrary incoherence or (lack of) evidence notwithstanding (Id., ¶¶ 88-95, 105), "trauma" is shorn of medical or any real meaning and relegated to a crutch for credibility where accusations otherwise would lack it (Id., ¶194), and the #Metoo movement tapped into these tropes and more to fuel false accusations, which Columbia encouraged (Id., ¶¶ 100-107).

4.      Ms. Tenzer insists that Sexual Violence Response (SVR) is not at the same as Gender-based Misconduct (GBM), but that sidesteps why SVR is critically relevant.  In Columbia's own words, SVR is "the University's primary office for sexual violence prevention and response," that hosts trauma-informed events, trainings, counseling and "collective community action." (Gender-Based Misconduct Prevention Task Force Report 2016-17, p.3). While it is true that SVR staff were not involved as investigators or panelists, SVR was still inextricably participating in Plaintiff's processes -- faculty and staff were trained at least annually by SVR and TIX/GBM. These decision-makers were taught how to view and weigh evidence and oral statements according to the bias evinced by SVR's social media. This means all of the decisions taken by faculty and staff, acting as investigators and panelists etc, come into question amidst the miasma of bias that rises from SVR.

5.      Per the Exhibits to Byler Declaration at Dkt. 32-1, we know Columbia, via SVR staff, *monitors* SVR's Facebook page (Dkt. No. 32-1 Ex. B, p. 1, 5). Yet, Ms. Tenzer contends

---

[1] click "view details" on this [webpage](webpage)

363 Seventh Avenue | 5th Floor | New York, NY | 10001 | T: 212.736.4500

101 Federal Street | 19th Floor | Boston, MA | 02110 | T: 617.209.2188

4 Palo Alto Square | 3000 El Camino Real | Suite 200 | Palo Alto, CA | 94306 | T: 650.209.7400



SVR, the office primarily entrusted with sexual matters, is unrelated to its Office of University Life which oversees its Title IX compliance and conduct office, both of which also regulate sexual matters. But SVR's Director, the head of University Life Goldberg, Title IX Coordinator Fisher, Dean Kromm, and Dean Roschal, all attended Columbia's Gender-based Misconduct Prevention Task Force. (Gender-Based Misconduct Prevention Task Force Report 2016-17, App. B) "The [Task Force] is a working group focused on programming and other efforts to reduce the incidence of sexual assault, sexual harassment and other gender-based misconduct at Columbia" (link) At one meeting, SVR's Rivera gave a "briefing" on SVR (Id., App. A). It stands to reason that this briefing included mention of SVR's Facebook page, a tool of 'community action 'in active use till mid-2022, as it garnered mention in a later document that would have been seen by this body. (Gender Based Misconduct Prevention and Response 2016-2017, p.4). The aforementioned administrators—Fisher who oversaw investigations, Roschal who was a panelist, Kromm who sanctioned Plaintiff, and Goldberg their boss—would have come into contact with SVR's Facebook page via Rivera's briefing. Moreover, the "Gender-Based Misconduct Office, **Sexual Violence Response**, and the Office of Equal Employment Opportunity and Affirmative Action **conduct extensive staff and faculty trainings throughout the University**," (emphasized) so all of the demonstrated bias in SVR's posts are therefore relevant as Faculty and staff, who received training from SVR, served as hearing and appeal panelists for Plaintiff (Gender-Based Misconduct Prevention Task Force Report 2016-17., p.7). SVR's posts are therefore relevant not only because they were made by an official organ of the University, but one that provides training to all relevant decision-makers in Plaintiff's processes. Likewise, SVR should therefore be treated as a necessary term for ESI discovery from TIX/GBM custodians.

6.      Plaintiff requests this term not out of a hunch, but from documentation: 2 of the 3 Janes at hand cited the #metoo as inspiration to file (though Columbia filed for Jane 4, perhaps it used the movement to convince her to take it up?). Plaintiff's request for #metoo as a term is not overly broad, given that he's interested in how it manifested at Columbia, especially as it involved him and other males, not in anything broader.[2] Columbia's citation to case law about a CLE event is helpful as it demonstrates the difference between Columbia, whose VP hosted an event about #metoo at Columbia and beyond, at which an SVR employee made very biased remarks against

---

[2] https://www.columbiaspectator.com/opinion/2018/09/26/sexual-respect-in-the-metoo-landscape/ , https://www.columbiaspectator.com/news/2017/10/03/doctoral-student-sues-columbia-over-alleged-sexual-harassment-by-professor/, https://www.columbiaspectator.com/news/2017/11/11/columbia-varsity-show-writer-steps-down-following-allegation-of-sexual-impropriety/

363 Seventh Avenue | 5th Floor | New York, NY | 10001 | T: 212.736.4500

101 Federal Street | 19th Floor | Boston, MA | 02110 | T: 617.209.2188

4 Palo Alto Square | 3000 El Camino Real | Suite 200 | Palo Alto, CA | 94306 | T: 650.209.7400



men. But it isn't just SVR: the Office of University Life, which leads GBM, TIX, created, advertised, promoted and recorded this event.

7. Ms. Tenzer disptes the relevance of #MeToo, but the relevance of "#MeToo" is also attested to in the link between Columbia's Sexual Violence Response (SVR) and Gender-Based Misconduct (GBM) offices. Columbia promoted an event on #MeToo via twitter which the Amended Complaint cites (ECF ¶¶37-39). Consider also a 2/23/18 Facebook post by SVR about an event, "Beyond #MeToo," hosted by Columbia's office of university life (an office then-run by Suzanne Goldberg who crafted the GBM rulebook). The post advertises a "timely discussion about gender and sexual harassment." Columbia also used their main Twitter account to advertise the event. Goldberg and a SVR staff member spoke at the event. Introducing the event, Goldberg called #Metoo a "pressing issue" for the university and asked that the audience refer to "all of our social media" (i.e., not just her office's but Columbia's collectively) for more information. During the event, at 10', SVR's Staten states "typically, survivors are not believed" and goes on to relate at 10',42" that Columbia students who make accusation of sexual assault deserve praise. Staten then specifies (at 11',05"-11',24") that "scores of women are being believed, which is great," but that there are men who are a "backlash" against women making accusations in wake of #metoo. It's telling when a large, prestigious institution not only plans an event about a fad, but dedicates effort to advertising it. Columbia recorded it and posted it on YouTube, and advertised it beforehand through their Facebook pages for their office of University Life and office of Sexual Violence Response. It is noteworthy, then, given the effort expended on this event, that the event classified men amidst the "me too moment" as either abusers, individuals who *might be* abusers who need to be introspective about past sexual encounters, or misogynist jerks who make fun of women who make allegations of abuse (11:05-11:24). Though Staten does note later (23:15) that 'not all men are rapists, 'this taxonomy *still* excludes men who have been abused, men who are falsely accused, and those subject to biased processes. This classification of men follows the biased logic that "we need to put survivors at the forefront of this movement." (1:02:57), meaning against men. VP Goldberg dubbed this event something "everybody needs to hear" (1:06:15-1:06:20). Goldberg changed her tune after activists interrupted her class with protests against alleged failings for students making accusations months prior.

8. Columbia's Suzanne Goldberg acknowledged that the #MeToo movement had made it easier for accusers to file complaints (ECF 41, ¶ 89) yet Columbia discounted this as rationale for a Jane to lie despite Jane Doe 3 viewing it as "the perfect political time to report" (Id., ¶182). Jane Doe 4 expressed similar sentiments. The nexus between Columbia, #metoo, and Title IX is further illustrated by the fact that signage like "they won't believe us [accusers] anyway" and

363 Seventh Avenue | 5th Floor | New York, NY | 10001 | T: 212.736.4500

101 Federal Street | 19th Floor | Boston, MA | 02110 | T: 617.209.2188

4 Palo Alto Square | 3000 El Camino Real | Suite 200 | Palo Alto, CA | 94306 | T: 650.209.7400



"tag Columbia" were hung on a visible, central location during the height of #metoo as Plaintiff's TIX processes were ongoing and Columbia committed itself to maintaining 2011/2014 procedures despite the option to bolster procedural protections for neutrality. One of their events, as recorded by a [11/7/18 Facebook post](), had Dean Kromm as a participant who wrote that she would have "solidarity" with "survivors" which is "critical for social change." The fact that the officer who used such biased language publicly at an SVR event is significant as <u>she handled Plaintiff's sanctioning during this time</u>.

      All of the foregoing goes to one of the basic elements of a Title IX claim: sex bias. *Yusef v. Vassar Corp.*, 35 F.3d 709, 715 (2d Cir. 1994) ("particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding").

                                                  **Very truly yours,**
                                                  **NESENOFF & MILTENBERG LLP**
                                                  **By:** ____*Philip A Byler, Esq.*____
                                                        **Philip A. Byler, Esq.**